J-S63012-17

NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37

| COMMONWEALTH OF PENNSYLVANIA | IN THE SUPERIOR COURT OF PENNSYLVANIA |
|---|---|
| v. | |
| KEITH WAYNE MOORE | |
| Appellant | No. 1762 WDA 2016 |

Appeal from the Judgment of Sentence May 26, 2016
In the Court of Common Pleas of Venango County
Criminal Division at No(s): CP-61-CR-0000677-2014

BEFORE:   BOWES, J., SOLANO, J., AND FORD ELLIOTT, P.J.E.

MEMORANDUM BY BOWES, J.:                FILED NOVEMBER 28, 2017

Keith Wayne Moore appeals from his May 26, 2016 judgment of sentence of 120 to 240 months incarceration, which was imposed following his conviction of rape of a child, statutory sexual assault, two counts of indecent assault, and corruption of a minor.  We affirm.

Appellant's convictions stem from his sexual assault of B.P., his paramour's daughter, when she was twelve years old.  The victim testified at trial that, initially, they were just friends.  Then Appellant began to hug and kiss her, making her "feel loved and wanted."  N.T. Jury Trial Vol. I, 1/12/16, at 35.  He would pick her up after school while her mother was working.  They would go to the bike trail or his car, and kissing escalated to touching of her breasts and vagina.  He told her not to tell her mom.  Later

he took her to his home where he touched her intimate parts and performed oral sex upon her. One week prior to her thirteenth birthday, Appellant was drinking heavily and they engaged in sexual intercourse. Thereafter, B.P. told Appellant that she thought she was pregnant. He helped B.P. concoct a story to tell her mother about having sexual intercourse with a boy named Tommy to explain a possible pregnancy. Her mother purchased a pregnancy test for B.P., the results of which were negative.

Months after the fact, B.P. told two friends about the sexual assaults. She later told her pastor's wife what occurred, who in turn told B.P.'s father, who reported the assaults to law enforcement. B.P. provided a statement to Trooper Brian K. O'Toole, an investigator in the criminal investigation unit at the Franklin State Police Barracks.

Trooper O'Toole testified that he attended an interview of the victim conducted by Children and Youth Services ("CYS") on August 25, 2014. On October 8, 2014, he conducted a recorded interview of Appellant at the City of Franklin Police Station. Appellant voluntarily came in after the Trooper told him that he had information that Appellant had provided alcohol to some minors. When he arrived, the trooper informed him of the real reason for the interview and told him that he was free to leave. The trooper read him Miranda warnings, and Appellant signed a form waiving those rights. Appellant initially denied any sexual contact with B.P. The questioning focused on the November night when the alleged sexual intercourse had

occurred. Appellant told the trooper that he would have had to be quite drunk to have sex with her. Id. at 100. Approximately one hour into the interview, he reported that on that occasion, the victim had tried to kiss him, that she pulled down her pants, and that she was trying to drag him into the bedroom to wrestle. Appellant admitted they wrestled in the bedroom. He had a memory of having sex on the couch that night but the victim's mother said they had not had sex. He was drunk and he could not remember with whom he had sex. At the end of the interview, the trooper gave Appellant a ride to his girlfriend's workplace.

Appellant was charged with numerous sexual offenses and, following a two-day jury trial, he was found guilty of the aforementioned charges. After a court-ordered pre-sentence investigation, Appellant was sentenced on March 28, 2016. Appellant filed a timely post-sentence motion in which he challenged the sufficiency of the evidence, the weight of the evidence, and the excessiveness of his sentence. He also sought permission to file a supplemental post-sentence motion within thirty days after receipt of the transcript, which the court granted on June 21, 2016. In his supplemental motion, Appellant moved for judgment of acquittal challenging the sufficiency of the evidence since there was no physical evidence of the sexual crimes, and Appellant provided credible testimony in which he denied sexual contact with the victim. He also renewed his request for a new trial

based on the weight of the evidence, and requested modification of his sentence.

Following an October 11, 2016 hearing, the court denied Appellant's post-sentence motion and supplemental post-sentence motion on November 1, 2016. On November 14, 2016, counsel filed a notice of appeal on Appellant's behalf. One week later, on November 21, Appellant filed a pro se appeal, application to proceed in forma pauperis, a motion for transcription of the notes of testimony, and a motion for appointment of counsel. The trial court declined to rule on the pro se motions since an appeal had been filed. After receiving two extensions of time in which to file a Pa.R.A.P. 1925(b) concise statement of errors complained of on appeal, Appellant, with the assistance of counsel, complied with the order. The trial court penned its Rule 1925(a) opinion, and the matter is ripe for our review. Appellant presents three issues:

> [I.] The evidence in this case was insufficient to support the charges of rape of a child, statutory sexual assault, corruption of minors, and the indecent assault charges.
>
> [II.] The sentence in this case was manifestly excessive and clearly unreasonable.
>
> [III.] The trial court erred in failing to grant Mr. Moore's presentence motions.

Appellant's brief at 2-3 (unnecessary capitalization and emphasis deleted).

In ruling on a sufficiency of the evidence claim,

We must determine whether the evidence admitted at trial, and all reasonable inferences drawn therefrom, when viewed in a light most favorable to the Commonwealth as verdict winner, support the conviction beyond a reasonable doubt. Where there is sufficient evidence to enable the trier of fact to find every element of the crime has been established beyond a reasonable doubt, the sufficiency of the evidence claim must fail.

The evidence established at trial need not preclude every possibility of innocence and the fact-finder is free to believe all, part, or none of the evidence presented. It is not within the province of this Court to re-weigh the evidence and substitute our judgment for that of the fact-finder. The Commonwealth's burden may be met by wholly circumstantial evidence and any doubt about the defendant's guilt is to be resolved by the fact-finder unless the evidence is so weak and inconclusive that, as a matter of law, no probability of fact can be drawn from the combined circumstances.

Commonwealth v. Rodriguez, 141 A.3d 523, 525 (Pa.Super. 2016).

Preliminarily, Appellant challenges the trial court's statement that "the credibility of a complainant of a sexual offense need not be corroborated in prosecutions," and that the fact-finder was free to believe the victim's testimony over Appellant's testimony. Trial Court Opinion, 1/20/17, at 5 (quoting 18 Pa.C.S. § 316). Appellant argues first that there was insufficient proof that he actually engaged in sexual intercourse with B.P. to sustain the conviction for statutory sexual assault pursuant to 18 Pa.C.S. § 3122.1, where he denied the assault and the victim's testimony was inconsistent regarding when the sexual conduct occurred. He contends, without citing any authority, that "inconsistent testimony should not support a criminal charge." Appellant's brief at 11.

- 5 -

Statutory sexual assault is committed when a person engages in sexual intercourse with a complainant to whom he or she is not married who is under the age of sixteen, and that person is at least four years older than the complainant, but less than eight years older or eight years older but less than eleven years older than the complainant. Pa.C.S. § 3122.1. Appellant's challenge is limited to the element of sexual intercourse.

B.P. testified that she and Appellant engaged in sexual intercourse one week before her thirteenth birthday in November 2015. N.T. Jury Trial, Vol. I, 1/12/16, at 43. She recounted for the jury how Appellant picked her up that day and took her to his house. There was kissing and touching of her breasts and vagina on the living room couch, and then they moved to the bedroom where they had sexual intercourse. The victim described the act of sexual intercourse, thus establishing that she knew what the term connoted. She remembered the timing of the occurrence because it was about a week before her birthday and her first time engaging in sexual intercourse.

Generally, a witness's credible testimony regarding an element of a crime is legally sufficient to prove that element. In addition, "This Court has long-recognized 'that the uncorroborated testimony of a sexual assault victim, if believed by the trier of fact, is sufficient to convict a defendant, despite contrary evidence from defense witnesses.'" Commonwealth v. Charlton, 902 A.2d 554, 562 (Pa.Super. 2006) (quoting Commonwealth v. Davis, 650 A.2d 452, 455 (Pa.Super. 1994)). Appellant's claim of

- 6 -

inconsistencies in the victim's report of when the sexual intercourse occurred is largely based on inference, and a faulty inference at that. This is not a situation where the testimony was so unreliable or contradictory that it would make "any verdict based thereon pure conjecture." Commonwealth v. Farquharson, 354 A.2d 545, 550 (Pa. 1976).

Moreover, Appellant's own statements corroborated when the sexual intercourse took place. He told police that he was drinking heavily on the night of November 8, 2015. He remembered having sexual intercourse that night, but when he questioned the victim's mother if they had engaged in sexual intercourse, she responded in the negative. In the interview with Trooper O'Toole, Appellant speculated that he may have had sexual intercourse with B.P., but that he was too inebriated to know.[1] We find no merit in Appellant's claim.

Next, Appellant contends that there was insufficient evidence of "indecent contact" with B.P. to support his conviction of indecent assault in the face of his denial. He alleges that the victim was inconsistent in her testimony regarding where and when such touching occurred.

A person may be convicted of indecent assault if

_____

[1] Appellant was treated for suspected alcohol poisoning at a nearby hospital on November 9, 2015, further corroborating the victim's testimony that the sexual intercourse occurred approximately one week before her thirteenth birthday.

the person has indecent contact with the complainant, causes the complainant to have indecent contact with the person or intentionally causes the complainant to come into contact with seminal fluid, urine or feces for the purpose of arousing sexual desire in the person or the complainant and:

. . .

(8) the complainant is less than 16 years of age and the person is four or more years older than the complainant and the complainant and the person are not married to each other.

18 Pa.C.S. § 3126. Indecent contact is "any touching of the sexual or other intimate parts of the person for the purpose of arousing or gratifying sexual desire, in either person." 18 Pa.C.S. § 3101. B.P. testified that on multiple occasions during a relatively short timeframe in 2014, Appellant touched her breasts and intimate parts. These incidents occurred on the bike trail and in Appellant's car. Appellant does not elaborate on the purported inconsistencies in B.P.'s account, and we find none of consequence. This claim fails.

Finally, Appellant alleges that the Commonwealth failed to present any evidence that he engaged in behavior that would constitute the offense of corruption of minors, as defined in 18 Pa.C.S. § 6301. The corruption of minors statute provides is pertinent part:

(ii) Whoever, being of the age of 18 years and upwards, by any course of conduct in violation of Chapter 31 (relating to sexual offenses) corrupts or tends to corrupt the morals of any minor less than 18 years of age, or who aids, abets, entices or encourages any such minor in the commission of an offense under Chapter 31 commits a felony of the third degree.

18 Pa.C.S. § 6301(a)(1)(ii).

There was substantial evidence introduced that Appellant, in his forties, enticed and encouraged B.P., then a minor twelve years of age, to engage in numerous prohibited sexual acts violative of Chapter 31. Appellant's sufficiency challenge is entirely without merit.

Next, Appellant claims that his sentence was manifestly excessive and unreasonable. Such a claim implicates the discretionary aspect of a sentence. See Commonwealth v. Hornaman, 920 A.2d 1282, 1283-84 (Pa.Super. 2007). There is no automatic right to pursue such a claim on appeal. To adequately preserve a discretionary sentencing claim, a defendant must present the issue in either a post-sentence motion or raise the claim during the sentencing proceedings. Commonwealth v. Cartrette, 83 A. 3d 1030, 1042 (Pa.Super. 2013) (en banc). Further, he must file a timely appeal and "preserve the issue in a court-ordered Pa.R.A.P. 1925(b) concise statement and a Pa.R.A.P. 2119(f) statement" in his appellate brief. Id. Finally, we will permit such an appeal only if the appellant presents a substantial question, i.e., a colorable claim that his sentence, while within the guideline range, was unreasonable and inappropriate under the sentencing code. Commonwealth v. Dodge, 77 A.3d 1263, 1270 (Pa.Super. 2013).

Appellant filed a timely appeal and preserved his claim that his sentence was excessive in his post-sentence motions and Rule 1925(b) statement. In addition, Appellant includes a Rule 2119(f) statement in his appellate brief in which he alleges that his sentence was manifestly excessive as it was not individualized, in violation of 42 Pa.C.S § 9781. We held in Commonwealth v. Simmons, 56 A.3d 1280, 1286 (Pa.Super. 2012), that a claim that a sentence was manifestly excessive because the trial court failed to issue an individualized sentence presented a substantial question. Thus, we will review the merits of Appellant's sentencing claim.

Appellant alleges that the court imposed a sentence that, given the gravity of the offense, exceeded what was necessary to protect the public and provide for his rehabilitative needs. He points to the fact that his prior record was "limited," that there was no physical injury to the minor victim, that his daughter was diagnosed with a brain tumor in 1995, and that he would be unable to obtain a job as considerations militating against such an excessive sentence.

The following principles inform our review. Sentencing is a matter vested in the sound discretion of the sentencing judge, and a sentence will not be disturbed on appeal absent a manifest abuse of discretion. Commonwealth v. Fullin, 892 A.2d 843, 847 (Pa.Super. 2006). An abuse of discretion in this context is more than an error in judgment. Id. The appellant must demonstrate that "the sentencing court ignored or misapplied

the law, exercised its judgment for reasons of partiality, prejudice, bias or ill will, or arrived at a manifestly unreasonable decision." Id. The sentencing judge has broad discretion in determining the proper sentence and we accord that decision great deference, recognizing that the sentencing court is in the best position to view the defendant's character and show of remorse. See Commonwealth v. Walls, 926 A.2d 957, 961 (Pa. 2007). Our review of a guideline sentence focuses on whether the sentence is "clearly unreasonable." 42 Pa.C.S. § 9781(c)(2).

In imposing sentence, the trial court is obliged to consider "the protection of the public, the gravity of the offense as it relates to the impact on the life of the victim and on the community, and the rehabilitative needs of the defendant." 42 Pa.C.S. § 9721(b). In considering the circumstances of the offense and the character of the defendant, the court should refer to the defendant's prior criminal record, his personal characteristics, and his potential for rehabilitation.

Appellant was sentenced on May 26, 2016. Appellant acknowledged that he had an opportunity to review the presentence report with counsel and placed some corrections to his address, telephone numbers of interested persons, and employment information. The Commonwealth represented that rape of a child carried an offense gravity score of fourteen. With Appellant's prior record score of zero, the standard range sentence was seventy-two months, plus or minus twelve months, to twenty years, with a

statutory maximum of forty years imprisonment. Statutory sexual assault of a child eleven years or older carried an offense gravity score of nine, and a standard range of twelve to twenty-four years, plus or minus twelve months. Corruption of minors carried an offense gravity score of six, and a minimum confinement of three to twelve months. A statutory minimum of restorative sanctions to nine months imprisonment governed the first of two indecent assault counts, and restorative sanctions to three months imprisonment on the other. The Commonwealth asked the court to impose a standard range sentence of ten to twenty years imprisonment on the rape of a child offense, and standard range sentences on each of the other counts, all sentences to run concurrently.

In an attempt to mitigate Appellant's sentence, counsel clarified the circumstances surrounding an alleged infraction in jail. Counsel also asked the court to disregard the prior third-degree misdemeanor simple assault conviction since it was almost twenty years old, as reflected in the prior record score of zero. Counsel noted that the court had the benefit of a presentence report, and asked that any sentences imposed be run concurrently.

Appellant availed himself of the opportunity to personally address the court. He advised that his daughter was diagnosed with a brain tumor in 1995, and thanked the community that supported their family by paying the expenses of traveling to Pittsburgh for chemotherapy and radiation. He

mentioned his son, who was smart and well-known, and who could have assisted him in procuring a job in the city before these events occurred. Finally, he apologized "for any of this that came about and I wasn't expecting this in my life." N.T. Sentence Hearing, 5/26/17, at 27.

The court recited on the record that it had taken into account Appellant's age, education, health, family and employment history, as well as all of the information contained in the presentence report. Id. It also weighed Appellant's statement, the remarks of his counsel, the report from the Venango County Jail, and the Commonwealth's recommendation. Finally, the court considered the circumstances surrounding the offenses, the sentencing guidelines, and "all other relevant factors." Id. at 28. After stating on the record that Appellant was not RRRI eligible and that it was not imposing any mandatory minimum sentences, the court sentenced Appellant to 120 months to 240 months for rape of a child. In addition, he imposed concurrent standard range sentences of twenty-four months to 120 months imprisonment for statutory sexual assault, twelve to eighty-four months imprisonment for corruption of minors, nine to sixty months on the first-degree misdemeanor indecent assault, and no sentence on the other indecent assault, finding that it merged with the other indecent assault count. Thus, the aggregate sentence was a term of imprisonment of 120 months to 240 months, with credit for time served. Appellant was advised

of the lifetime registration requirements associated with his status as a tier three sexual offender.

Based on the record before us, we find that the trial court was apprised of all relevant considerations prior to the imposition of sentence, that the standard range sentences imposed concurrently were not manifestly excessive, and that the court did not abuse its discretion.  Appellant's sentencing claim is without merit.

Appellant's final issue is a challenge to the trial court's order denying suppression of his statements to Trooper O'Toole at the initial interview, as well as statements he made to the trooper during a second interview following his arrest.  Appellant concedes that he signed a waiver after being given Miranda warnings.  He contends, however, that he did not understand those warnings, and thus, his "waiver was not knowingly, voluntarily, or understandingly made."  Appellant's brief at 14.

Our standard of review of a challenge to the trial court's denial of a suppression motion is well-established:

> We determine whether the court's factual findings are supported by the record and whether the legal conclusions drawn from them are correct. Where, as here, it is the defendant who is appealing the ruling of the suppression court, we consider only the evidence of the prosecution and so much of the evidence for the defense which remains uncontradicted when fairly read in the context of the whole record. If, upon our review, we conclude that the record supports the factual findings of the suppression court, we are bound by those facts, and

> may reverse only if the legal conclusions drawn therefrom are in error.
>
> Commonwealth v. Pruitt, 597 Pa. 307, 325, 951 A.2d 307, 317 (2008).

Commonwealth v. Ventura, 975 A.2d 1128, 1136 (Pa.Super. 2009). In making that determination, we are bound by the record at the suppression hearing. Id. (citing Commonwealth v. Days, 718 A.2d 797, 802, n. 8 (Pa Super. 1998)). Where the appeal is based on allegations of legal error, the suppression court's legal conclusions are not binding on an appellate court. Commonwealth v. Fulmore, 25 A.3d 340, 346 (Pa.Super. 2011). Thus, any legal conclusions are reviewed de novo. Id.

Appellant moved to suppress his statements to Trooper O'Toole on the ground that the trooper intentionally misled him as to the meaning of waiver by informing him that it meant "you are willing to answer questions." He maintains that he has dyslexia, that he so informed the trooper, and that his waiver was not tendered knowingly, voluntarily and understandingly. Appellant contends that the trooper's misrepresentation of the meaning and impact of the Miranda waiver constituted coercion. Moreover, Appellant argues that his second waiver and subsequent statement was tainted by the initial misrepresentation that the trooper did not correct.

The trial court ordered a hearing on the motion on June 29, 2015, and on August 14, 2015, it denied the motion. The Commonwealth offered the testimony of Trooper O'Toole regarding the circumstances precipitating the

questioning. The trooper maintained that, after explaining to Appellant that the interview would be video-recorded, he advised Appellant that he could leave at any time. He produced a paper containing Miranda warnings which he showed Appellant as he read the rights aloud. Trooper O'Toole acknowledged that Appellant mentioned that he was dyslexic and could not read well, but "with a pen I usually follow along word for word and I read out loud to him, so even if he wasn't able to read or anything, I stated the rights to him." N.T. Omnibus Pre-Trial, 6/29/15, at 10. Appellant signed the waiver. Trooper O'Toole acknowledged that he told Appellant that the waiver meant that he was willing to answer questions, or words to that effect, and maintained that the response was not misleading. He testified that, during the course of the interview, Appellant never asked to leave. Appellant confirmed that he went to the station voluntarily and that he chose to enter the room with the officer. Appellant conceded that, "Even if he did tell me I could leave I don't know if I would have." Id. at 36. At the conclusion of the interview, the trooper gave Appellant a ride to an apartment complex nearby.

There was a second interrogation on November 19, 2014, following Appellant's arrest. The trooper testified that he would have again informed Appellant of his Miranda rights as time had elapsed since the initial interrogation and Appellant was now under arrest. Appellant signed a waiver of those rights. At the conclusion of the suppression hearing, the

court announced that it would view the videotaped interview before rendering its decision.

The court, after reviewing the videotape, other evidence, and the testimony, found that Appellant was free to leave, and hence, not subjected to a custodial interrogation. The court reached that conclusion after expressly crediting the trooper's testimony that he told Appellant that he was free to leave. The court also considered the surrounding circumstances and the videotaped interview. See Commonwealth v. Williams, 941 A.2d 14, 30 (Pa.Super. 2008) ("[I]n evaluating whether Miranda warnings were necessary, a court must consider the totality of the circumstances.")

Per our standard of review, we will not disturb the court's credibility determinations. As the finder of fact, it was "within the suppression court's sole province to pass on the credibility of witnesses and the weight to be accorded their testimony." Commonwealth v. Galendez, 27 A.3d 1042, 1046 (Pa.Super. 2011) (en banc) (citation omitted). The factfinder was free to believe all, some, or none of the evidence presented. Id. The suppression court credited the trooper's testimony that he advised Appellant prior to the first interview that he was free to leave at any time. Since the record supports that factual finding, we have no basis to disturb it.

Appellant admittedly went to the station voluntarily. In addition, he was told that he was free to go. The record supports the suppression court's finding that he was not in custody. Thus, there was no requirement that

Appellant be given Miranda warnings, or that he waive them prior to questioning. Nonetheless, Appellant was apprised both orally and in writing that he had a right to remain silent, a right to an attorney either retained or appointed, and warned that any statement made could be used against him. While the trooper's explanation of a waiver was not textbook, it was not a misrepresentation either. As he correctly informed Appellant, the signing of the waiver form indicates that one is willing to answer questions. Since the facts and circumstances support the suppression court's findings, we find no error in the court's refusal to suppress statements Appellant made to the trooper during the first interview.

Appellant's sole basis for suppressing his statements made following his arrest is that Trooper O'Toole did not clear up the alleged prior misrepresentation of the effect of a waiver, thus tainting his subsequent statement. In finding that Appellant's first waiver was knowing and intelligent, the suppression court necessarily rejected Appellant's contention that the trooper's explanation was unlawful or rendered the statements inadmissible. It follows then that there was no primary illegality that could taint the second interrogation.[2] The court found Appellant's waiver at that

_____

[2] Where it is alleged that an initial illegal confession tainted a subsequent confession, courts must determine whether the original taint has been sufficiently purged. Although we need not reach that issue herein, our Supreme Court in Commonwealth v. Burno, 154 A.3d 764, 771 (Pa.
(Footnote Continued Next Page)

time to be knowing, intelligent, and voluntary and that he agreed to speak with the trooper. We find no basis to reverse that finding.

Judgment of sentence affirmed.

Judgment Entered.

_Joseph D. Seletyn_

Joseph D. Seletyn, Esq.
Prothonotary

Date:  11/28/2017

---

(Footnote Continued) ——————————

2017), favorably cited the factors identified in Commonwealth v. Green, 581 A.2d 544 (Pa. 1990), as relevant to a purge determination. They include: "(1) whether Miranda warnings were given; (2) the 'temporal proximity' of the illegal police conduct to the confession; (3) the presence of intervening circumstances or events; (4) the 'purpose and flagrancy of the official misconduct.'" Id. at 550-51.