J-S22013-21

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| Appellant | : | |
| | : | |
| | : | |
| | : | |
| v. | : | |
| | : | |
| | : | |
| JAMES NOAH BECKETT | : | No. 122 MDA 2021 |

Appeal from the Order Entered December 24, 2020
In the Court of Common Pleas of Dauphin County
Criminal Division at No(s):  CP-22-CR-0004756-2019

BEFORE:   PANELLA, P.J., McCAFFERY, J., and PELLEGRINI, J.[*]

MEMORANDUM BY PANELLA, P.J.:               **FILED JUNE 24, 2022**

In this appeal brought by the Commonwealth, we are asked to review whether the trial court properly concluded that a state trooper lacked probable cause to arrest James Noah Beckett for driving under the influence of alcohol ("DUI"). After careful review, we conclude the trial court erred. We therefore reverse and remand for further proceedings.

On April 27, 2019, at approximately 3:15 a.m., Pennsylvania State Police Trooper Joshua Porter observed a Mazda CX5 travelling northbound on I-81 in Dauphin County. Trooper Porter indicated that, as he followed Beckett for 2.4 miles, he observed Beckett drive over the white fog line on multiple occasions. Trooper Porter stopped Beckett and eventually performed three

_____

[*] Retired Senior Judge assigned to the Superior Court.

field sobriety tests and a portable breathalyzer test. At the conclusion of these tests, Trooper Porter placed Beckett under arrest and had Beckett submit a blood sample for chemical analysis. Ultimately, Trooper Porter charged Beckett with driving under the influence (general impairment), careless driving, and disregarding traffic lanes.

Beckett filed an omnibus pretrial motion seeking to suppress evidence. The trial court held a hearing on July 27, 2020. Thereafter, the parties filed memoranda of law. After reviewing the parties' submissions, the trial court concluded that Trooper Porter had probable cause to stop Beckett and charge him with crossing the fog line in violation of 75 Pa.C.S.A. § 3309(1). However, the court granted suppression of the results of the chemical blood test concluding Trooper Porter lacked probable cause to arrest Beckett for DUI. The Commonwealth then filed this timely appeal.[1]

We begin our review by noting a relatively unusual circumstance. The trial court here issued a split decision. While it suppressed the results of the blood draw due to its conclusion that Trooper Porter lacked probable cause to arrest Beckett for DUI, it nevertheless found that Trooper Porter had probable cause to stop Beckett and charge him with a traffic violation under 75

---

[1] The Commonwealth has certified, pursuant to Pennsylvania Rule of Appellate Procedure 311(d), the trial court's order granting the suppression of evidence substantially handicaps the prosecution of this case. Commonwealth's Brief at 1. Therefore, pursuant to Pa.R.A.P. 311(d), this Court has jurisdiction to hear this appeal from the trial court's interlocutory order, even though the order did not terminate the prosecution.

Pa.C.S.A. § 3309(1). Due to this split decision, Beckett, as appellee, raises arguments asking us to affirm the trial court's order on a basis that the trial court explicitly rejected: that Trooper Porter lacked probable cause for the traffic stop.

Normally, Beckett would have no opportunity to have this Court review, before trial, the trial court's conclusion that the stop was justified. **See Commonwealth v. Fisher**, 221 A.2d 115, 116 (Pa. 1966) (holding that a criminal defendant may not appeal from the denial of a motion to suppress). This would be true even if Beckett had filed a cross-appeal. **Commonwealth v. Slaton**, 556 A.2d 1343, 1353 (Pa. Super. 1989) (*en banc*).

Here, however, Beckett did not file a cross-appeal. Instead, he asks us to reverse the trial court's conclusion on the legality of the traffic stop through the guise of our power to affirm the trial court "on any basis." **In re Jacobs**, 15 A.3d 509, n.1 (Pa. Super. 2011) (holding that this Court may affirm an order on any basis). We decline Beckett's invitation to circumvent our Rules of Appellate Procedure to review the trial court's explicit conclusion that Trooper Porter had probable cause to pull Beckett over. We therefore review only the trial court's conclusion that Trooper Porter lacked probable cause to arrest Beckett for DUI.

The Commonwealth argues that the trooper's observations were sufficient to establish probable cause to arrest Beckett for DUI. When reviewing an order granting a defendant's motion to suppress evidence, "we

- 3 -

are bound by that court's factual findings to the extent that they are supported by the record, and we consider only the evidence offered by the defendant, as well as any portion of the Commonwealth's evidence which remains uncontradicted, when read in the context of the entire record." **Commonwealth v. Wallace**, 42 A.3d 1040, 1048 (Pa. 2012) (citation omitted). "Our review of the legal conclusions which have been drawn from such evidence, however, is *de novo*, and, consequently, we are not bound by the legal conclusions of the lower courts." **Id**. (citation omitted). Moreover, our scope of review from a suppression ruling is limited to the evidentiary record that was created at the suppression hearing. **See In re L.J.**, 79 A.3d 1073, 1087 (Pa. 2013).

Further, Pa.R.Crim.P. 581 provides that "[t]he Commonwealth shall have the burden ... of establishing that the challenged evidence was not obtained in violation of the defendant's rights." Pa.R.Crim.P. 581(H). Specifically, the Commonwealth has the burden of "establish[ing] by a preponderance of the evidence that the evidence was properly obtained." **Commonwealth v. Galendez**, 27 A.3d 1042, 1046 (Pa. Super. 2011) (citation omitted).

In order to arrest Beckett for DUI, Trooper Porter was required to have probable cause to believe Beckett was impaired to an extent that he could not safely drive. "Probable cause is made out when the facts and circumstances which are within the knowledge of the officer at the time of the arrest, and of

which he has reasonably trustworthy information, are sufficient to warrant a [person] of reasonable caution in the belief that the suspect has committed or is committing a crime." *Commonwealth v. Thompson*, 985 A.2d 928, 931 (Pa. 2009) (quotation marks omitted). Probable cause "does not involve certainties, but rather the factual and practical considerations of everyday life on which reasonable and prudent [persons] act." *Commonwealth v. Salter*, 121 A.3d 987, 995 (Pa. Super. 2015) (brackets in original).

Here, Trooper Porter did not base his conclusion on any single factor. Instead, he considered the totality of the circumstances. *See* N.T., 7/27/20 at 25. First, we have Trooper Porter's account of his observation prior to executing the traffic stop:

> As I was traveling north I observed [Beckett's] Mazda to drive over the solid right white line there on the right side of the roadway. They drove over the solid white line. I maneuvered behind them just to continue observing, and while following them, for approximately 2.4 miles, I watched the vehicle drive over the shoulder multiple times.

N.T., 7/27/20, at 7. On cross-examination, Trooper Porter indicated that he saw Beckett drive over the white line on three occasions, each time by varying amounts. *Id*. at 24.

The Commonwealth also played a portion of the audio and video recording from the motor vehicle recorder ("MVR") on Trooper Porter's vehicle and admitted the entire recording into evidence as Commonwealth's Exhibit 1. The recording depicts the initial pursuit and stop of Beckett's Mazda, the field sobriety tests conducted by Trooper Porter, Trooper Porter's

administration of a portable breath test ("PBT"), and Beckett's arrest at the scene.

The trial court made the following observations regarding the events leading to the stop of the vehicle as they appeared on the MVR:

This [c]ourt's review of the MVR revealed three (3) instances of drifting. One (1) of those instances was significant enough to raise some level of concern for a reasonable officer in that the vehicle's two (2) right-hand tires briefly crossed the fog line. Still, the infraction was brief and [Beckett] self-corrected quickly and easily without jerky movements. … The other two (2) instances of alleged "swerving" were of such a slight nature as to be insignificant to this analysis.

Trial Court Opinion, 3/16/21, at 2.

After pulling Beckett over, Trooper Porter noticed an odor of alcohol on Beckett's breath. **See** N.T., 7/27/20, at 26. When questioned, Beckett initially admitted to only having a single drink that night. **See id**., at 27. During the subsequent testing, however, Beckett admitted to having "about three" drinks. **Id**.

Both Beckett and the trial court focus extensively on the subsequent physical impairment testing administered by Trooper Porter. To the extent the trial court weighed the evidence presented to it and determined that the results of these physical tests were inconclusive, we see no reason to override the court's determination. Both Trooper Porter and the prosecutor acknowledged that the physical testing was not perfectly administered. **See**, **e.g.**, **id**., at 29 (Trooper Porter acknowledging he missed a step in assessing Beckett's ability to use his eyes to follow a moving object), 30 (Trooper Porter

acknowledging he may not have waited for the suggested amount of time in performing the nystagmus test); *see also* Appellant's Brief, at 18 (conceding the nystagmus test was performed improperly); Trial Court Opinion, 3/16/21, at 4-5 (observing that the walk and turn test revealed only one "clue," out of eight possible clues, that indicated Beckett was intoxicated, and the one-legged stand test similarly revealed only one clue out of four possible clues).

Nonetheless, it is undisputed that Trooper Porter administered a PBT on Beckett, with a result that was above the legal limit. *See* N.T., 7/27/20, at 31. The trial court explicitly disregarded this result by concluding that Trooper Porter did not possess sufficient reasonable suspicion to perform the test. *See* Trial Court Opinion, 3/16/21, at 5, n.6. We disagree. Reasonable suspicion is defined as a standard that is less stringent than probable cause: an officer need only be able to identify "specific and articulable facts" that raise an inference of criminal activity. *Commonwealth v. Holmes*, 14 A.3d 89, 95 (Pa. 2011). Here, Trooper Porter was able to point to his observations of Beckett's erratic driving, combined with the odor of alcohol on Beckett's breath, Beckett's admission to having been drinking, and Beckett's slurred speech, *see* N.T., 7/27/20, at 11, to support his suspicion that Beckett had been driving while impaired. Under these circumstances, we conclude Trooper Porter had sufficient reasonable suspicion to request a chemical breath test.

Once the chemical breath test corroborated Trooper Porter's suspicions,[2] Trooper Porter possessed probable cause to arrest Beckett for DUI. As a result, we conclude the trial court erred in suppressing the results of the chemical blood test. We therefore reverse and remand for further proceedings.

Order reversed. Case remanded for further proceedings. Jurisdiction relinquished.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 6/24/2022

---

[2] The chemical breath test does not represent conclusive proof of Beckett's blood alcohol level. However, the breath test is intended to assist an officer in determining whether there is probable cause to arrest a driver for DUI. **See** 75 Pa.C.S.A. § 1547(k) ("The sole purpose of this preliminary breath test is to assist the officer in determining whether or not the person should be placed under arrest.").