J-A12006-23

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT OP 65.37**

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| Appellant | : | |
| | : | |
| | : | |
| | : | |
| v. | : | |
| | : | |
| | : | |
| ALBERTO ALVARDO | : | No. 1720 EDA 2022 |

Appeal from the Order Entered June 24, 2022
In the Court of Common Pleas of Philadelphia County Criminal Division at
No(s): CP-51-CR-0001212-2022

BEFORE: OLSON, J., NICHOLS, J., and McLAUGHLIN, J.

MEMORANDUM BY OLSON, J.: **FILED NOVEMBER 15, 2023**

The Commonwealth of Pennsylvania (Commonwealth) appeals from an order entered in the Criminal Division of the Court of Common Pleas of Philadelphia County on June 24, 2022, granting Alberto Alvarado's (Alvarado) motion to suppress a firearm recovered from his vehicle during an encounter on January 27, 2022. We affirm.

The factual and procedural posture of this case is undisputed. At approximately 6:40 p.m. on January 27, 2022, Officer Pedro Martin and two other officers with the Philadelphia Police Department were in full uniform on routine patrol in an unmarked police car along the 3000 block of A Street in Philadelphia, Pennsylvania. As the unmarked vehicle travelled past Alvarado's lawfully parked vehicle, Officer Martin observed Alvarado sitting in the driver's seat and speaking to a woman standing on the adjacent sidewalk. Officer Martin was familiar with Alvarado, having seen him in the neighborhood and

having spoken with him earlier in the day. Officer Martin also knew that Alvarado was not permitted to possess a firearm.

Officer Martin stopped the unmarked police cruiser within the single travel lane of the one-way street and activated a spotlight on the patrol car. Footage generated by Officer Martin's body camara shows that Officer Martin stopped the police vehicle along the front, passenger-side bumper of Alvarado's car and that the position of the patrol car blocked vehicular travel along the one-way lane. The footage also shows that Officer Martin directed the spotlight towards Alvarado's vehicle. After alighting from the patrol car, Officer Martin approached Alvarado's vehicle from the driver's side and the two other officers approached from the passenger's side. The officers were in full uniform. Officer Martin carried a flashlight in his left hand and, as he neared Alvarado's car, he greeted both Alvarado and the woman standing on the adjacent sidewalk. Seconds later, one of the officers approaching Alvarado's car from the passenger side alerted Officer Martin that a gun was present in the center console of Alvarado's vehicle.[1] Officer Martin immediately drew his service pistol with his right hand, pointed the gun toward the ground, and instructed Alvarado not to move. Officer Martin then asked Alvarado whether he possessed a permit to carry a firearm and Alvarado responded that he did not. Officer Martin removed Alvarado's keys from the ignition, removed a cigarette from Alvarado's lips, and directed Alvarado to

---

[1] Officers recovered a loaded handgun with seven live rounds from Alvarado's vehicle.

keep his hands in plain sight. Alvarado then stepped out of his vehicle at Officer Martin's request and was placed in handcuffs. According to Officer Martin's body camara recording, the foregoing events unfolded in less than one minute.

The Commonwealth charged Alvarado with possession of a firearm by a prohibited person (18 Pa.C.S.A. § 6105(a)), carrying a firearm without a license (18 Pa.C.S.A. § 6106), and carrying a firearm on a public street in Philadelphia (18 Pa.C.S.A. § 6108). Alvarado moved to suppress the gun, claiming that his encounter with law enforcement began as an investigative detention that was unsupported by reasonable suspicion. The trial court convened a hearing on June 16, 2022, at which the Commonwealth presented the testimony and body-camara footage of Officer Martin, as well as a certificate of non-licensure for Alvarado. Alvarado did not present evidence. The trial court took the matter under advisement at the conclusion of the hearing.

On June 24, 2022, the court granted Alvarado's motion to suppress. In its opinion issued pursuant to Pa.R.A.P. 1925(a), the court found that the officers' conduct, under the totality of circumstances, began as an investigative detention of Alvarado because a reasonable person in Alvarado's position would not have felt free to depart. *See* Trial Court Opinion, 10/6/22, at 4-5. The court further found that the police lacked reasonable suspicion of criminal activity when they initiated their encounter with Alvarado. *See id.* at 5. As such, the court determined that the firearm recovered from Alvarado

should be suppressed because Alvarado was unlawfully subjected to an investigative seizure that was unsupported by reasonable suspicion of criminal activity. *See id*. This appeal followed.[2]

On appeal, the Commonwealth challenges the trial court's suppression order, pointing out that "body-worn camara footage refutes the [trial] court's factual finding that [Officer Martin] approached [Alvarado] with his service pistol drawn." Commonwealth's Brief at 4. On the strength of this factual assertion, the Commonwealth maintains that the interaction between the officers and Alvarado began, not as an investigative detention, but as a mere encounter because the officers did not meaningfully restrict Alvarado's movements through a significant display of official force or the deployment of restraints. Moreover, the Commonwealth claims that the encounter with Alvarado ripened into an investigative detention only after the officers observed a gun in Alvarado's vehicle from a lawful vantage point and when Officer Martin drew his service weapon based upon valid suspicion that Alvarado unlawfully possessed the firearm seen in his vehicle. In its own words, the Commonwealth argues:

> The [trial] court based its ruling on a factual finding that an officer approached [Alvarado] with his service pistol drawn, but this

---

[2] The Commonwealth filed a timely notice of appeal in which it certified that the trial court's order granting Alvarado's motion to suppress either terminated or substantially handicapped its prosecution. *See* Notice of Appeal, 7/5/22; *see also* Pa.R.A.P. 311(d) ("[T]he Commonwealth may take an appeal as of right from an order that does not end the entire case where the Commonwealth certifies in the notice of appeal that the order will terminate or substantially handicap the prosecution.").

finding was wholly contradicted by [the officer's] body-worn camara footage, which plainly showed that [the officer] did not draw his service pistol until **after** his partner alerted him to the presence of a gun [in Alvarado's vehicle]. Because the officers displayed no other show of force or meaningfully restricted [Alvarado's] movement, the interaction began as a mere encounter. During this mere encounter, the officers developed reasonable suspicion to believe that [Alvarado unlawfully possessed] a gun because they observed it from a lawful vantage point and had specific knowledge that he was prohibited from carrying [a firearm]. Accordingly, the order granting suppression of the illegally possessed gun should be reversed and the case remanded for trial.

*Id*. at 8 (emphasis in original).

In these instances, our scope and standard of review is well settled.

When reviewing an order granting a defendant's motion to suppress evidence, "we are bound by that court's factual findings to the extent that they are supported by the record, and we consider only the evidence offered by the defendant, as well as any portion of the Commonwealth's evidence which remains uncontradicted, when read in the context of the entire record." *Commonwealth v. Wallace*, 42 A.3d 1040, 1048 (Pa. 2012) (citation omitted). "Our review of the legal conclusions which have been drawn from such evidence, however, is *de novo*, and, consequently, we are not bound by the legal conclusions of the lower courts." *Id.* (citation omitted). Moreover, our scope of review from a suppression ruling is limited to the evidentiary record that was created at the suppression hearing. *See In re L.J.*, 79 A.3d 1073, 1087 (Pa. 2013).

Further, Pa.R.Crim.P. 581 provides that "[t]he Commonwealth shall have the burden ... of establishing that the challenged evidence was not obtained in violation of the defendant's rights." Pa.R.Crim.P. 581(H). Specifically, the Commonwealth has the burden of "establish[ing] by a preponderance of the evidence that the evidence was properly obtained." *Commonwealth v. Galendez*, 27 A.3d 1042, 1046 (Pa. Super. 2011) (citation omitted).

***Commonwealth v. Barnes***, 296 A.3d 52, 55 (Pa. Super. 2023) (parallel citations omitted), *quoting* ***Commonwealth v. Smith***, 285 A.3d 328, 331-32 (Pa. Super. 2022).

Our prior cases observe that:

The Fourth Amendment to the United States Constitution, incorporated to states by and through the Fourteenth Amendment to the United States Constitution, and Article I, Section 8 of the Pennsylvania Constitution, protect citizens from "unreasonable searches and seizures." U.S. Const. amend. IV. The Fourth Amendment provides:

The right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures, shall not be violated, and no Warrants shall issue, but upon probable cause, supported by Oath or affirmation, and particularly describing the place to be searched, and the persons or things to be seized.

***Id***. Similarly, Article I, Section 8 provides:

The people shall be secure in their persons, houses, papers and possessions from unreasonable searches and seizures, and no warrant to search any place or to seize any person or things shall issue without describing them as nearly as may be, nor without probable cause, supported by oath or affirmation subscribed to by the affiant.

Pa. Const. art. 1, § 8.

This Court has explained:

The law recognizes three distinct levels of interactions between police officers and citizens: (1) a mere encounter; (2) an investigative detention, often described as a ***Terry*** stop, ***see Terry v. Ohio***, 392 U.S. 1 (1968); and (3) a custodial detention.

A mere encounter can be any formal or informal interaction between an officer and a citizen, but will normally be an inquiry by the officer of a citizen. The hallmark of this

interaction is that it carries no official compulsion to stop or respond and therefore need not be justified by any level of police suspicion.

In contrast, an investigative detention carries an official compulsion to stop and respond. Since this interaction has elements of official compulsion it requires reasonable suspicion of unlawful activity.

Finally, a custodial detention occurs when the nature, duration and conditions of an investigative detention become so coercive as to be, practically speaking, the functional equivalent of an arrest. This level of interaction requires that the police have probable cause to believe that the person so detained has committed or is committing a crime.

*Commonwealth v. Barnes*, 296 A.3d 52, 56, *quoting* *Commonwealth v. Jefferson*, 256 A.3d 1242, 1247-48 (Pa. Super. 2021) (*en banc*) (citations, quotation marks and ellipses omitted). Whether a seizure has occurred is regarded as a question of law subject to plenary review. *See Commonwealth v. Jones*, 988 A.2d 649, 654 (Pa. 2010). We undertake an objective assessment of the totality of the surrounding circumstances when evaluating the nature of a police-citizen interaction. *See Commonwealth v. Strickler*, 757 A.2d 884, 889 (Pa. 2000).

Pennsylvania courts employ a case-by-case analysis of police-citizen encounters.

The totality-of-the-circumstances test [ultimately centers] on whether the suspect has in some way been restrained by physical force or show of coercive authority. [*See Strickler*, 757 A.2d at 890]. Under this test, no single factor controls the ultimate conclusion as to whether a seizure occurred - to guide the inquiry, the United States Supreme Court and [our Supreme] Court have employed an objective test entailing a determination of whether a reasonable person would have felt free to leave or otherwise

terminate the encounter. [**See id.** at 890 n.8]. "[W]hat constitutes a restraint on liberty prompting a person to conclude that he is not free to 'leave' will vary, not only with the particular police conduct at issue, but also with the setting in which the conduct occurs." **Michigan v. Chesternut**, 486 U.S. 567, 573-574 (1988) (citations omitted).

**Commonwealth v. Lyles**, 97 A.3d 298, 303 (Pa. 2014).

Our inquiry in these cases focuses upon a variety of factors including, but not limited to,

the number of officers present during the interaction; whether the officer informs the citizen they are suspected of criminal activity; the officer's demeanor and tone of voice; the location and timing of the interaction; the visible presence of weapons on the officer; and the questions asked. Otherwise inoffensive contact between a member of the public and the police cannot, as a matter of law, amount to a seizure of that person. **Commonwealth v. Beasley**, 761 A.2d 621, 624–625 (Pa. Super. 2000).

**Commonwealth v. Collins**, 950 A.2d 1041, 1047, n.6 (Pa. super. 2008) (*en banc*).

Although the body camara footage demonstrates that Officer Martin did not draw his service weapon until after his partner alerted him to the presence of a gun in Alvarado's vehicle, we agree with the trial court that the police-citizen encounter in this case began as an investigative detention that was unsupported by reasonable suspicion. The record establishes that the following events occurred before Officer Martin learned that Alvarado possessed a firearm in his vehicle. First, Officer Martin stopped his unmarked police cruiser along the front, passenger-side bumper of Alvarado's car. It is obvious from the body-cam footage produced at the suppression hearing that the position of the patrol car blocked vehicular travel along A Street's single

lane and essentially barricaded Alvarado's vehicle along the sidewalk and barred its re-entry into traffic from its parked position. Next, Officer Martin directed a spotlight on the patrol car towards Alvarado's vehicle and three armed officers, in uniform, alighted from the police vehicle. As we stated in our factual recitation, Officer Martin approached Alvarado's vehicle from the driver's side and the two other officers approached Alvarado's car from the passenger's side. Again, it is immediately clear from the video evidence that Alvarado and his vehicle were the exclusive focus of the approaching officers. Taken together, the orientation of the police cruiser, combined with the approach of multiple officers towards both sides of Alvarado's vehicle, blocked Alvarado's departure either by vehicle or on foot and palpably conveyed to Alvarado an official message to remain situated and respond to the officers. Because this occurred before the police acquired knowledge of Alvarado's possession of a firearm and, thereby, reasonable grounds to suspect criminal activity, the trial court correctly ordered suppression despite the claims raised by the Commonwealth on appeal.

Order affirmed.

Judgment Entered.

Benjamin D. Kohler, Esq.
Prothonotary

Date: 11/15/2023

- 9 -