J. S29040/19

**NON-PRECEDENTIAL DECISION – SEE SUPERIOR COURT I.O.P. 65.37**

COMMONWEALTH OF PENNSYLVANIA     :     IN THE SUPERIOR COURT OF
                                               :            PENNSYLVANIA
                    v.                     :
                                               :
NAADIR HANIF ABDUL-ALI,           :           No. 1256 EDA 2017
                                               :
              Appellant           :


Appeal from the Judgment of Sentence, November 15, 2016,
in the Court of Common Pleas of Montgomery County
Criminal Division at No. CP-46-CR-0008102-2015


BEFORE: BENDER, P.J.E., LAZARUS, J., AND FORD ELLIOTT, P.J.E.


MEMORANDUM BY FORD ELLIOTT, P.J.E.:       **FILED SEPTEMBER 10, 2019**

Naadir Hanif Abdul-Ali appeals from the November 15, 2016 judgment of sentence of life imprisonment plus a consecutive term of 10 to 20 years' imprisonment imposed after a jury found him guilty of second-degree murder, burglary, aggravated assault, criminal trespass, simple assault, and five counts of criminal conspiracy.[1] After careful review, we affirm the judgment of sentence.

The trial court summarized the relevant facts of this case as follows:

> On Wednesday, September 23, 2015, after enduring weeks of physical and emotional abuse from [a]ppellant, eighteen (18) year old Egyniah Muhammad, ended their relationship and returned to live in her parents' home in Lower Moreland Township, Montgomery County. After

---

[1] 18 Pa.C.S.A. §§ 2502(b), 3502(a)(1), 2702(a)(1), 3503(a)(1)(ii), 2701(a)(3), and 903(a), respectively.

spending the next four (4) days trying unsuccessfully to convince Egyniah to come back to him, [a]ppellant told her, "If we can't be together, somebody got to go."[Footnote 11]  Egyniah's older sister corroborated that conversation.

> [Footnote 11] A download of Egyniah's cellular phone revealed nineteen (19) phone calls between Egyniah and [a]ppellant on Sunday, September 27, 2015.

At approximately 7 p.m. on Sunday, September 27, 2015, [a]ppellant removed his grandmother's black Toyota Camry sedan from its parking spot in a Philadelphia garage on Upsal Street and drove two (2) of his coconspirators out to Egyniah's home.  The three men drove back to Philadelphia, where they picked up a fourth man, and returned to Egyniah's home.

At approximately 11:00 p.m., Kevin Brown and his wife, Cassandra Brock, were preparing to go to sleep in the second floor bedroom of their home.  Their son, Symir Brown, had just left the house through the back door to walk to the local Wawa where he worked the night shift.  Also in the house with them were their daughters, Ruquaiyyah and Egyniah, along with Egyniah's baby son.  As Egyniah entered the downstairs kitchen to throw out an ice cream container, she saw a masked man outside the back door.  She thought she recognized the masked man as [a]ppellant's close friend, codefendant Desmond Smith ("Smith").  Egyniah quickly locked the inside door and ran up to the second floor to alert her family to an intruder before hiding in her bedroom closet with her baby son.  Egyniah's father confronted the intruders at his bedroom door. Kevin Brown yelled at his wife to climb out through the window out onto the roof, which she did.  One of the intruders fired several shots from a .22 caliber handgun through the bedroom door, with one bullet striking Mr. Brown in the throat, fatally wounding him.  Cassandra Brock heard a noise as she watched her husband stumble

out of the second story window and fall into the bushes below. Appellant and his codefendants fled the house from the back door, jumped into the black Toyota sedan and drove away with the lights off. After driving less than one (1) block, [a]ppellant stopped the car and told his coconspirators "Got to go back there. The job's not finished." The other three (3) men told [a]ppellant to drive away. Appellant returned his grandmother's car to its parking spot in the Philadelphia garage before going their separate ways.

Paul Hoyer, M.D. performed the autopsy on Kevin Brown on September 28, 2015, and determined the fifty-four (54) year-old's manner of death to be homicide. Based on the evidence gathered from witnesses and surveillance video, detectives focused their investigation on [a]ppellant, Desmond Smith, Abdurrahman Amin and Majahid Mathews. Detectives obtained a warrant for [a]ppellant's arrest along with his codefendants on October 1, 2015. Detectives arrested codefendant Smith early in the morning at his residence in Philadelphia on October 2, 2015. On the same day, Detective Gregory Henry took codefendant Smith's statement in which he implicated [a]ppellant at the Montgomery County Detective Bureau. Codefendant Mujahid Mathews ("Mathews") also gave a statement to police implicating [a]ppellant.

Appellant turned himself in to the Lower Moreland Township Police Department at approximately 10:00 p.m. on October 7, 2015. Detective Henry read and explained [a]ppellant's Constitutional Rights and obtained a waiver at 11:07 p.m. Appellant proceeded to give a statement to the detectives implicating himself in the homicide. At 7:01 a.m. on October 8, 2015, [a]ppellant declined to give his consent to videotaping his statement.

Trial court opinion, 7/11/18 at 2-6 (citations to notes of testimony and additional footnotes omitted).

Appellant was charged with second-degree murder and related offenses in connection with this incident and ultimately proceeded to a jury trial on July 5, 2016. Following an 11-day trial, the jury found appellant guilty of second-degree murder, burglary, aggravated assault, criminal trespass, simple assault, and five counts of criminal conspiracy. Appellant was found not guilty of firearms not to be carried without a license and two counts of possessing instruments of crime.[2] As noted, appellant was sentenced to life imprisonment plus a consecutive term of 10 to 20 years' imprisonment on November 15, 2016. Appellant filed timely post-sentence motions that were denied by the trial court on March 22, 2017. This timely appeal followed.[3]

Appellant raises the following issues for our review:

> I. Did the trial court err in permitting the Commonwealth to introduce testimony concerning an August 2015 alleged sexual assault between [a]ppellant and co-defendant Desmond Smith against the decedent's daughter as **res gestae** evidence and/or motive for the home invasion resulting in the decedent's death?
>
> II. Did the trial court err in failing to grant [a]ppellant's motion for a mistrial after co-defendant Abdurrahman Amin pleaded guilty mid-trial?

---

[2] 18 Pa.C.S.A. §§ 6106(a)(1) and 907(a) and (b), respectively.

[3] Following an extension, appellant complied with the trial court's Pa.R.A.P. 1925(b) order and filed his "concise" statement on June 6, 2018, raising 17 multi-layered issues. Thereafter, on June 20, 2018, the trial court denied appellant's request for an extension of time to file a supplemental Rule 1925(b) statement. On July 11, 2018, the trial court filed its comprehensive Rule 1925(a) opinion disposing of all of appellant's claims.

> III. Did the trial court err in permitting the Commonwealth to introduce non-testifying co-defendant Desmond Smith's redacted statement that expressly implicated [a]ppellant in the sexual assault and burglary in violation of **Bruton** [**v. United States**, 391 U.S. 123 (1968)?]

Appellant's brief at 3.[4]

Appellant's first and third claims on appeal concern the admissibility of evidence.

> Questions concerning the admissibility of evidence are within the sound discretion of the trial court . . . [and] we will not reverse a trial court's decision concerning admissibility of evidence absent an abuse of the trial court's discretion. An abuse of discretion is not merely an error of judgment, but is rather the overriding or misapplication of the law, or the exercise of judgment that is manifestly unreasonable, or the result of bias, prejudice, ill-will or partiality, as shown by the evidence of record. [I]f in reaching a conclusion the trial court over-rides [sic] or misapplies the law, discretion is then abused and it is the duty of the appellate court to correct the error.

**Commonwealth v. Belknap**, 105 A.3d 7, 9-10 (Pa.Super. 2014) (citations and internal quotation marks omitted; brackets in original), **appeal denied**, 117 A.3d 294 (Pa. 2015).

Likewise, "[o]ur standard of review for the denial of a motion for a mistrial is limited to assessing whether the trial court abused its discretion."

---

[4] Appellant has not briefed the remaining 14 issues raised in his Rule 1925(b) statement and has, therefore, abandoned them on appeal.

*Commonwealth v. Scott*, 146 A.3d 775, 778 (Pa.Super. 2016) (citation omitted), *appeal denied*, 166 A.3d 1232 (Pa. 2017).

Here, the trial court authored a comprehensive, 44-page opinion that thoroughly addressed and disposed of all of appellant's claims on appeal. Specifically, the trial court found, *inter alia*, that testimony concerning the August 2015 sexual assault of Egyniah by appellant and codefendant Smith was relevant to establish: the *res gestae* of the case; "why Egyniah left him and moved back in with her parents"; and appellant's motive for seeking revenge upon Egyniah and her family by engaging in the September 27, 2015 home invasion that resulted in the murder of her father. (*See* trial court opinion, 7/11/18 at 30-34.) The trial court reasoned that any prejudice that resulted from the introduction of this "prior bad acts" evidence was cured by its limiting instructions to the jury. (*Id.* at 34.)

The trial court also found that appellant's contention that he was entitled to a mistrial after codefendant Amin entered an open guilty plea to third-degree murder at the close of the fifth day of trial is unavailing. (*Id.* at 30.) In reaching this conclusion, the trial court reasoned that:

> 1) codefendant Amin's statement to police did not implicate himself or any of his codefendants; 2) Counsel for codefendant Amin deferred to his client's decision on which potential jurors to strike; 3) both codefendant Amin and codefendant Smith rejected a plea offer on Wednesday, July 6, 2016; 4) on Friday, July 8, 2016, Amin's Counsel asked the Commonwealth for a plea offer; [5)] Deputy District Attorney McGoldrick did not participate in the plea negotiations, and [6)] codefendant Amin absolutely

and unequivocally refused to cooperate with the Commonwealth.

***Id.*** at 29-30.[5]

Lastly, it is clear from the trial court's opinion that appellant's contention that codefendant Smith's statement, which implicated him in the August 2015 sexual assault of Egyniah and the September 27, 2015 home invasion, was inadmissible under ***Bruton***,[6] is meritless. (***See*** trial court opinion, 7/11/16 at

---

[5] We further note that the record reflects that codefendant Amin pled guilty outside the presence of the jury, and the jury was never informed of his guilty plea. Additionally, the trial court gave a limiting instruction to the jury before testimony resumed on July 12, 2016, cautioning them that they were not to draw any conclusions from codefendant Amin's absence from the remainder of the trial, and should not consider it as evidence of the guilt of appellant and codefendant Smith. (***See*** notes of testimony, 7/12/16 at 19-20.) Courts in this Commonwealth have long recognized that "when examining the potential for undue prejudice, a cautionary jury instruction may ameliorate the prejudicial effect of the proffered evidence." ***Commonwealth v. Hairston***, 84 A.3d 657, 666 (Pa. 2014), ***cert. denied***, 135 S.Ct. 164 (2014) (citations omitted). Jurors are presumed to follow the trial court's instructions. ***Commonwealth v. Elliott***, 80 A.3d 415, 445 (Pa. 2013), ***cert. denied***, 135 S.Ct. 50 (2014).

[6] In ***Bruton***, the United States Supreme Court recognized that a defendant is deprived of his rights under the Confrontation Clause when his non-testifying codefendant's confession naming him as a participant in the crime is introduced at trial, even if the jury is instructed to consider that confession only against the codefendant. ***Bruton***, 391 U.S. at 135-136.

> Following ***Bruton***, the U.S. Supreme Court has approved redaction and a limiting instruction as a means of eliminating the possible spillover prejudice arising from the admission of a non-testifying codefendant's confession against that codefendant at a joint trial. ***Bruton*** and its progeny establish Sixth Amendment norms governing state criminal trials, and this Court has had ample opportunity to consider and apply the precepts. In our own implementation

35-36.)  As noted by the trial court, at trial "[t]he Commonwealth moved for the admission of codefendant Smith's [s]tatement without objection." (*Id.* at 35 n.18.)  Moreover, Smith's redacted statement at trial did not give rise to a **Bruton** violation because it did not explicitly reference or incriminate appellant in any way, and prejudicial effect of this statement was ameliorated by the trial court's cautionary instruction to the jury that this statement could only be considered as evidence against Smith and no one else.  (**See** notes of testimony, 7/18/16 at 190-191; **see also Hairston**, 84 A.3d at 666.)

Following our careful review of the record, including the briefs of the parties and the applicable law, we discern no error on the part of the trial court in reaching these conclusions.  Accordingly, we adopt the pertinent portions of the well-reasoned opinion of the Honorable Thomas P. Rogers as our own for purposes of this appellate review, and affirm on the basis of the reasoning stated therein.

Judgment of sentence affirmed.

---

of this federal law, we have explained that the challenged codefendant's statement must be incriminating on its face and that redactions involving the substitution of neutral pronouns . . . instead of names or other obvious methods of deletion, do not obviously identify the other codefendants.

**Commonwealth v. Daniels**, 104 A.3d 267, 294 (Pa. 2014) (citations omitted).

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 9/10/19

# IN THE COURT OF COMMON PLEAS OF MONTGOMERY COUNTY, PENNSYLVANIA
## CRIMINAL DIVISION

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA | : | SUPERIOR COURT |
| | : | NO. 1256 EDA 2017 |
| v. | : | |
| | : | TRIAL COURT |
| NAADIR HANIF ABDUL-ALI | : | NO. 8102-2015 |

ROGERS, J.                                                                       JULY 11, 2018

## *OPINION*

### I.     INTRODUCTION

Following deliberations at the close of an eleven (11) day trial, a jury convicted Naadir Abdul-Ali ("Appellant") on one (1) count each of murder in the second degree,[1] criminal conspiracy to commit murder,[2] burglary,[3] criminal conspiracy to commit burglary,[4] aggravated assault,[5] criminal conspiracy to commit aggravated assault,[6] simple assault,[7] criminal

---

[1]  18 Pa.C.S.A. § 2502(b).

[2] 18 Pa.C.S.A. § 903(a)(1)(2).

[3] 18 Pa.C.S.A. § 3502(a)(1)(i).

[4] 18 Pa.C.S.A. § 903(a)(1)(2).

[5] 18 Pa.C.S.A. § 2702(a)(1).

[6] 18 Pa.C.S.A. § 903(a)(1)(2).

[7] 18 Pa.C.S.A. § 2701(a)(3).

conspiracy to commit simple assault,[8] criminal trespass,[9] and criminal conspiracy to commit criminal trespass[10]. The jury acquitted Appellant on one (1) count each of firearms not to be carried without a license, possessing instruments of crime and possessing instruments of crime – possession of weapon.

The undersigned imposed the mandatory life sentence without parole on count 1, second degree murder and a consecutive term of ten (10) to twenty (20) years' imprisonment on count 2, criminal conspiracy to commit murder. The court entered a determination of guilt without further penalty on counts 3 through 15. Appellant now appeals to the Superior Court of Pennsylvania ("Superior Court") from this judgment of sentence.

## II.   FACTS AND PROCEDURAL HISTORY

The relevant facts in the light most favorable to the Commonwealth and the procedural history underlying this appeal are as follows. On Wednesday, September 23, 2015, after enduring weeks of physical and emotional abuse from Appellant, eighteen (18) year old Egyniah Muhammad, ended their relationship and returned to live in her parents' home in Lower Moreland Township, Montgomery County. (Notes of

---

[8] 18 Pa.C.S.A. § 903(a)(1)(2).

[9] 18 Pa.C.S.A. §3503(a)(1)(ii).

[10] 18 Pa.C.S.A. § 903(a)(1)(2).

2

Testimony ("N.T.) Trial, 7/7/16, at 66, 72-73, 76, 86, 88, 93-96, 98). After spending the next four (4) days trying unsuccessfully to convince Egyniah to come back to him, Appellant told her, "If we can't be together, somebody got to go." (*Id.* at 99-100).[11] Egyniah's older sister corroborated that conversation. (N.T. Trial, 7/8/16, at 21-22).

At approximately 7 p.m. on Sunday, September 27, 2015, Appellant removed his grandmother's black Toyota Camry sedan from its parking spot in a Philadelphia garage on Upsal Street and drove two (2) of his coconspirators out to Egyniah's home. (N.T. Trial, 7/11/16, at 76-79). The three men drove back to Philadelphia, where they picked up a fourth man, and returned to Egyniah's home. (*Id.* at 79-81).

At approximately 11:00 p.m., Kevin Brown and his wife, Cassandra Brock, were preparing to go to sleep in the second floor bedroom of their home. (N.T. Trial, 7/7/16, at 260). Their son, Symir Brown, had just left the house through the back door to walk to the local Wawa where he worked the night shift. (*Id.* at 109). Also in the house with them were their daughters, Ruquaiyyah and Egyniah, along with Egyniah's baby son. (*Id.* at 106, 258-59). As Egyniah entered the downstairs kitchen to throw out an ice cream container, she saw a masked man outside the back door. (*Id.* at 109-10). She thought she recognized the masked man as Appellant's close friend, codefendant Desmond Smith ("Smith"). (*Id.* at

---

[11] A download of Egyniah's cellular phone revealed nineteen (19) phone calls between Egyniah and Appellant on Sunday, September 27, 2015. (Affidavit of Probable Cause, 10/1/15 at 5).

110). Egyniah quickly locked the inside door and ran up to the second floor to alert her family to an intruder before hiding in her bedroom closet with her baby son. (*Id.* at 112-13, 268). Egyniah's father confronted the intruders at his bedroom door. (*Id.* at 260-61). Kevin Brown yelled at his wife to climb out through the window out onto the roof, which she did. (*Id.* at 262-63). One of the intruders fired several shots from a .22 caliber handgun through the bedroom door, with one bullet striking Mr. Brown in the throat, fatally wounding him. (N.T. Trial, 7/6/16, at 168; 7/8/16, at 121, 147-48; 7/11/16, at 83). Cassandra Brock heard a noise as she watched her husband stumble out of the second story window and fall into the bushes below. (N.T. Trial, 7/7/16, at 264). Appellant and his codefendants fled the house from the back door, jumped into the black Toyota sedan and drove away with the lights off. (N.T. Trial, 7/8/16, at 42-44; 7/11/16, at 83-84). After driving less than one (1) block, Appellant stopped the car and told his coconspirators "Got to go back there. The job's not finished." (*Id.* at 84). The other three (3) men told Appellant to drive away. (*Id.*). Appellant returned his grandmother's car to its parking spot in the Philadelphia garage before going their separate ways. (*Id.* at 85-87; N.T. Trial, 7/12/16, at 123, 149, 154-55; Commonwealth Exhibit C-94, C-99).

Paul Hoyer, M.D. performed the autopsy on Kevin Brown on September 28, 2015, and determined the fifty-four (54) year-old's manner of death to be homicide. (N.T. Trial, 7/8/16, at 118, 120, 127;

4

Commonwealth Exhibit C-60). Based on the evidence gathered from witnesses and surveillance video, detectives focused their investigation on Appellant, Desmond Smith, Abdurrahman Amin and Majahid Mathews.[12] Detectives obtained a warrant for Appellant's arrest along with his codefendants on October 1, 2015. Detectives arrested codefendant Smith early in the morning at his residence in Philadelphia on October 2, 2015. On the same day, Detective Gregory Henry took codefendant Smith's statement in which he implicated Appellant at the Montgomery County Detective Bureau. (N.T. Trial, 7/12/16, at 58-59, 86-110; Commonwealth Exhibit C-94). Codefendant Mujahid Mathews ("Mathews") also gave a statement to police implicating Appellant. (Id. at 43-46; Defense Exhibit-Abdul-Ali-6; N.T. Trial 7/11/16, at 89-90, 118, 140-46; Defense Exhibit-Smith-3).

Appellant turned himself in to the Lower Moreland Township Police Department at approximately 10:00 p.m. on October 7, 2015. Detective Henry read and explained Appellant's Constitutional Rights and obtained a waiver at 11:07 p.m. (N.T. Hearing on Defendant Abdul-Ali's Motion to Suppress, 5/18/16; Commonwealth's Exhibit C-Abdul-Ali-3). Appellant proceeded to give a statement to the detectives implicating himself in the homicide. (Id.; Commonwealth's Exhibit C-Abdul-Ali-2). At 7:01 a.m. on

---

[12] Codefendants Abdurrahman Amin and Mujahid Mathews grew up together and were close friends. (N.T. Trial, 7/11/16, at 70). Codefendant Mathews testified that Amin was related to Appellant, however, codefendant Mathews had not met Appellant or codefendant Smith before Sunday, September 27, 2015. (Id. at 174, 204).

5

Scan & Verified

October 8, 2015, Appellant declined to give his consent to videotaping his statement. (*Id.*; Commonwealth's Exhibit C-Abdul-Ali-5).

Represented by Benjamin Cooper, Esquire ("Attorney Cooper"), Appellant attended his preliminary hearing on November 4, 2015, where he learned that codefendant Mathews had implicated him in the murder. (MDJ Criminal Docket 0000340-2015). Both Appellant and codefendant Mathews were being housed at the Montgomery County Correctional Facility ("MCCF"). (N.T. Trial, 7/11/16, at 90). On November 5, 2015, codefendant Mathews received a handwritten letter referencing his cooperation with the investigation. (*Id.* at 90-94; Commonwealth Exhibit C-87). Testing later revealed Appellant's latent fingerprint on that letter. (N.T. Trial 7/13/16, at 128; Commonwealth Exhibit C-108). Codefendant Mathews also received two (2) additional threatening handwritten notes that he believed to be from Appellant on County prison letterhead. (N.T. Trial, 7/11/16 at 91-94; Commonwealth Exhibits C-88 and C-89).

On November 18, 2015, Attorney Cooper entered his appearance on behalf of Appellant. The Commonwealth filed a notice of joinder of the codefendants' cases on December 31, 2015. Attorney Cooper filed an Omnibus Pre-Trial Motion on Appellant's behalf on February 18, 2016. On April 12, 2016, Attorney Cooper filed several pre-trial motions, including, a motion to suppress statements, a motion for a *Daubert* hearing, a motion to compel disclosure of police notes which formed the basis of opinion for the trajectory/ballistics analysis, a motion to exclude

6

Lower Moreland Township jurors and a motion to sever. On April 15, the Commonwealth filed several pre-trial motions, including, a motion *in limine* to introduce evidence of the defendants Abdul-Ali's and Smith's prior bad acts, a motion *in limine* to admit defendant's letter to Mujahid Mathews, a motion *in limine* to admit evidence of Defendant's refusal to submit handwriting exemplar, a motion *in limine* to admit the 911 audio recordings of Cassandra Brock and Ruquaiyyah Muhammad and a motion *in limine* to introduce evidence of the Defendant's consciousness of guilt, i.e., his refusal to provide handwriting samples.

The undersigned presided over the hearing on Appellant's motion to suppress his statement on May 18, 2016, and issued the court's Findings of Fact and Conclusions of Law Pursuant to Rule 581(I) of the Pennsylvania Rules of Criminal Procedure on June 30, 2016. On May 19, 2016, the undersigned heard argument on Counsels' pretrial motions. On June 22, 2016, the undersigned heard argument on Counsels' motions *in limine.*

Appellant proceeded to trial on Tuesday, July 5, 2016. Before the jury had been empaneled that morning, codefendant Mathews pled guilty to third-degree murder. Jury selection began in the afternoon with the court conducting *voir dire.* The undersigned explained as follows:

> The Commonwealth in this case -- again, the Montgomery County District Attorney's Office -- has alleged that on or about Sunday, September 27, 2015, at approximately 11:10 p.m., at 2388 Philmont Avenue in Lower Moreland Township, the defendants, Desmond O. Smith, Naadir Abdul-Ali, and

7

Abdurrahman Amin, committed murder of the second degree and related offenses.

(N.T. Trial, 7/5/16, at 8).

The undersigned then asked whether any members of the panel had "heard or read anything about the facts of this case or have any knowledge about this case". (*Id.*). Eight members of the panel raised their numbered cards. (*Id.*). The court then asked those eight members whether having heard something about the case would affect them in rendering a fair and impartial verdict. (*Id.*). No one raised their card. (*Id.*). However, none of those panel members were seated on the eventual jury. (*Id.* at 141-42).

Deputy District Attorney McGoldrick explained the Commonwealth's theory of the case in his opening statement. The Commonwealth contended that Appellant wanted to exact revenge when his "wife" left him and he rounded up his codefendants and broke into Egyniah's home to commit a burglary. According to the Commonwealth, all four were coconspirators and accomplices as they entered with masks and guns with the intent to assault the people inside that home.

On Wednesday, July 6, 2016, the Commonwealth placed its current offer to codefendants Smith and Amin on the record outside the presence of the jury. Both declined to accept the Commonwealth's offer. (N.T. Trial, 7/6/16, at 16). In addition, Counsel submitted an agreed upon proposed limiting jury instruction regarding the prior bad acts testimony

8

on July 7, 2016 (N.T. Trial, 7/7/16, at 6-7), which the court marked as Joint Exhibit J-1 (*Id.* at 64). The Commonwealth then presented the testimony of Egyniah Muhammad.

Prior to Egyniah's testimony regarding an alleged sexual assault by Appellant and codefendant Smith, the court read the jointly prepared and agreed upon limiting instruction. (*Id.* at 74-75). Egyniah testified that although she loved Appellant, she did not agree to or want to engage in sexual activity with codefendant Smith, a man she barely knew, and was forced to do so at gunpoint by Appellant. (*Id.* at 76, 78-79). Following her direct testimony and before Counsel's cross-examination, Attorney Cooper made an oral motion to introduce photographs as follows:

> I provided the Court with four documents. They are photographs of Ms. Muhammed. Some, I believe, are self-photographs, or selfies, and she's dressed I would describe as provocatively. These materials were recovered from the telephone of Mr. Ali which was provided to us in discovery.

(*Id.* at 129-30). Attorney Cooper confirmed that the text message from Egyniah to Appellant that accompanied the photographs applied only to Appellant. (*Id.* at 131). Deputy District Attorney McGoldrick objected to the introduction of the photographs based on relevance and described it as an effort to discredit Egyniah's morals. (*Id.*). The court denied Appellant's request. (*Id.* at 131-32).

The Commonwealth presented the testimony of several other witnesses as well, including that of Sean Creedon, a neighbor of Kevin Brown and his family. (N.T. Trial, 7/8/16, at 40-68). Mr. Creedon

9

testified that at approximately 11:00 p.m. on Sunday, September 27, 2015, he was watching Sunday Night Football on television when he heard what he thought were four (4) gunshots. (*Id.* at 41). Mr. Creedon got up and went to a second floor window to see where the gunshots were coming from. (*Id.* at 42). He explained that as he looked out his window he eventually saw the back door to Kevin Brown's house across the street open and four (4) males run out the back towards his own house, get into a dark four-door sedan in front of his house and drive away without its headlights on. (*Id.* at 42-45). Mr. Creedon described the driver as stockier than the other three and wearing a gray hooded sweatshirt. (*Id.* at 43-45). Another neighbor, Joseph Reynolds, Jr., testified that when he looked out his hall window after hearing gunshots at approximately 11:09 p.m. on September 27, 2015, he saw three (3) or four (4) people run out the back door of Kevin Brown's house and down some steps. (*Id.* at 70-72).

On July 11, 2016, codefendant Mathews testified, implicating himself in the home invasion as well as his three codefendants. (N.T. Trial, 7/11/16, at 80-83, 85). After the jury had been dismissed for the day, codefendant Amin entered an open guilty plea to third degree murder and related offenses. (N.T. Open Guilty Plea, 7/11/16). Outside the presence of the jury, on Tuesday morning, July 12, 2016, Attorney Cooper made an oral motion for mistrial based on codefendant Amin's guilty plea after Amin's Counsel had participated in jury selection, had not made an opening statement and did not cross examine codefendant Mathews.

10

Following brief argument on the oral motion for a mistrial, the jury entered the courtroom, at which time the undersigned gave the following limiting jury instruction as agreed upon by Counsel:

> Members of the jury, you will note this morning that one of the defendants, Abdurrahman Amin, is absent from these proceedings.
> Now, I instruct you that you are to make no inferences and make no conclusions regarding his absence. You may not consider his absence as evidence of the guilt of the remaining defendants. It still remains the Commonwealth's burden to prove the remaining defendants guilty beyond a reasonable doubt.

(N.T. 7/12/16, at 19-20).

The undersigned conducted a hearing on the oral motion for a mistrial on Wednesday morning, July 13, 2016. Codefendant Amin's attorney William R. McElroy, Esquire, and Deputy District Attorney McGoldrick testified at the hearing. After listening to all of the testimony and the arguments of Counsel, the court denied Attorney Cooper's motion.

The Commonwealth introduced additional evidence, including surveillance video, through other witnesses, which put Appellant in the Upsal Street parking garage wearing a gray hoodie sweatshirt at approximately 7:00 p.m. and again at 11:30 p.m. on September 27, 2015. (N.T. Trial, 7/8/16, at 225, 230, 234, 253-64; Commonwealth Exhibit C-75, C-76 and C-77). The surveillance video also shows a dark Toyota Camry sedan exiting the garage at approximately 7:21 p.m. and re-entering the garage around 11:27 p.m. (*Id.* at 253-254). Cellular telephone evidence demonstrated that Appellant's codefendant, Mathews

11

and codefendant Amin's cell phones all traveled from Philadelphia around 7:00 p.m. to the area of the crime scene, back to Philadelphia, and then later that night back to the area of the crime scene at around 11:00 p.m. (N.T. Trial, 7/14/16, at 33-38, 39-42, 51-56, 59-62, 63-68; Commonwealth Exhibit C-115, C-116, C-117, C-118).

After the Commonwealth rested on July 14, 2016, codefendant Smith presented, among other witnesses, the alibi testimony of his girlfriend Sallie Jackson. On cross-examination, the court permitted the Commonwealth to introduce evidence of Ms. Jackson's alleged dishonesty before a grand jury for the purpose of impeaching her credibility. (N.T. Trial 7/14/16, at 275-276).

At the charging conference, Attorney Cooper requested, among other things, that the court read a modified version of standard jury instruction Pa.SSJI (Crim) 4.13(a) on the failure to make prompt complaint in certain sexual offenses. (N.T. Trial, 7/18/16, at 8-11). The court determined that the instruction did not apply in this particular case and denied Appellant's request. (*Id.* at 13-14). However, the undersigned also stated that Attorney Cooper would be free to argue "the fact that the alleged sexual assault event occurred on a certain date; the alleged murder occurred on another date, and the sexual assault was never reported". (*Id.*). In his closing, Attorney Cooper argued that the jury should question Egyniah's credibility because she never reported the alleged sexual assault. (*Id.* at

12

32-35). Finally, the court instructed the jury regarding, *inter alia*, the credibility of all of the witnesses. (*Id.* at 182-85).

The jury returned from deliberations with their verdicts on July 19, 2016. The undersigned conducted a sentencing hearing on November 15, 2016, and imposed the sentence set forth above. (N.T. Sentencing Hearing, 11/15/16, at 29-30). Attorney Cooper filed a post-sentence motion raising two issues on November 25, 2016, which the court heard on December 14, 2016, and denied on March 22, 2017.

Appellant filed a notice of appeal on April 17, 2017. The undersigned directed Appellant to file a Concise Statement of the Errors Complained of on Appeal ("Statement") pursuant to Pa.R.A.P. 1925(b) by order also docketed on April 17, 2017. On May 2, 2017, the Montgomery County Public Defender's Office filed a Motion for Extension of Time in Which to File Concise Statement asking the court to vacate its 1925(b) order until the notes of testimony were transcribed and then issue a new order granting Appellant ninety days to file a concise statement. (Motion, filed 5/2/17).[13] On May 30, 2018, the Public Defender's Office requested an extension of time until June 6, 2018, to file a concise statement. The court granted the request by order docketed on June 1, 2018. Appellant finally filed his Statement on June 6, 2018.

---

[13] The court reporter had completed the trial transcripts and sent a copy to the Public Defender's office and the District Attorney's office on October 27, 2016. (Official Court Reporter Transcription Invoice to Court Services dated 10/27/16).

## III. ISSUES

Appellant raises the following issues on appeal:

1. [A-17]  The evidence was insufficient as a matter of law to find Appellant guilty of second degree murder or any of the related charges as there was no proof beyond a reasonable doubt Appellant fired the fatal shot.

2. [A-15]  The trial court erred in denying Appellant[']s motion for judgment of acquittal. (See NT 7/18/16 am at 18-19).

3. [A-16]  Appellant challenges the weight of the evidence as to all charges as per his post-sentence motion.

4. [A-4]  The trial court erred in denying Appellant's suppression motion of his statements, in violation of his rights under the United States and Pennsylvania Constitutions. The statements should have been suppressed due to the delay between arrest, arraignment, processing and ability to contact counsel. (See NT 5/18/16; omnibus pre-trial motion of February 18, 2016; motion to suppress of April 12, 2016; Order of June 30, 2016). The statement was coerced and the product of improper interrogation techniques, including but not limited to Appellant's mental health and age and the detectives failed to re-*Mirandize* Appellant after the break.

5. [A-1]  The trial court erred in denying the motion to sever and the motion in opposition to joinder. (See Order June 20, 2016) The role of the other defendants, who ultimately pled guilty, caused prejudicial confusion of issues and defenses such that Appellant's right to a fair trial was impaired.

6. [A-12]  The trial court erred in denying Appellant's motion for a mistrial. (See NT 7/12/16 am at 7-18 and Order of July 13, 2016)

7. [A-9]  The trial court erred in granting the motion to introduce prior bad acts of Appellant. Specifically, the trial court erred in admitting highly prejudicial testimony concerning alleged sexual assault. (See NT 7/7/16 at 6)

14

8. [A-2] The trial court violated Appellant's right to confrontation under the Sixth Amendment of the U.S. Constitution and Article 1, Section 9 of the Pennsylvania Constitution by admitting in joint trial the confession of a non-testifying co-defendant that implicated Appellant as a participant. (See NT 7/19/16) The trial court erred in allowing evidence through the statement of Desmond Smith that identified Appellant through his relationship with Egyniah Muhammad. (See NT 6/22/16 at 25) The trial court erred in denying the defense proposed redaction to the term "the other guy" because it identified Appellant. (See NT 6/22/16 at 29); and the trial court erred in denying the defense request to redact the statement "I saw him on the news." (See NT 6/22/16 at 30).

9. [A-10] The trial court erred in denying the motion to introduce pictures of Egyniah Muhammad. (See Order of July 7, 2016)

10. [A-14] The trial court erred in denying Appellant's request for the jury to receive instruction regarding delay in reporting rape. (See NT 7/18/16 at 11-13 and 239)

11. [A-3] The trial court erred in granting the Commonwealth's Motion to preclude evidence of the conviction of certain witnesses. (See NT 6/22/16 p. 64:18-25; p. 66: 12-16; p. 67: 9-20; Order of June 30, 2016). Joseph Reynolds was convicted of Criminal Attempt and Theft by Deception. (See NT 6/22/16 at 70: 18-20). Carlisha Devereux was serving a probation sentence. (NT 6/22/16 at 73). These errors prevented Appellant from challenging the witnesses' credibility.

12. [A-13] The trial court erred in granting Commonwealth's motion to admit [Appellant's] letter to Mujahid Matthews [sic]. (See Motion of April 15, 2016)

13. [A-5] The trial court erred in granting the Commonwealth's motion to admit evidence of Appellant's refusal to submit handwriting sample. (See Order June 24, 2016)

14. [A-11] The trial court erred in denying the motion to exclude Lower Moreland jurors. (See Order July 8, 2016)

15

15. [A-6] The trial court erred in granting the Commonwealth's motion to admit the recordings of Cassandra Brock and Rufuayyah [sic] Muhammed. (See Order June 24, 2016)

16. [A-7] The trial court erred in granting the Commonwealth's motion to admit evidence of Sallie Jackson's alleged false testimony before the investigating grand jury. (See Order June 29, 2016)

17. [A-8] The trial court erred in denying Appellant's request for a Frye hearing. (See Order June 29, 2016)

(Appellant's Statement, filed June 6, 2018).[14]

## IV. DISCUSSION

Following a painstaking review of the record, this court concludes that several of Appellant's issues were either not preserved or are overly vague and, thus, waived. In general, issues not preserved before the trial court are waived and cannot be raised for the first time on appeal. Pa.R.A.P. 302(a); Pa.R.A.P. 1925(b)(4)(vii). An appellant is also precluded from arguing a new legal theory for the first time on appeal. *Commonwealth v. Truong*, 36 A.3d 592, 598 (Pa.Super. 2012)(*en banc*)(citations omitted).[15]

---

[14] The court has reordered Appellant's issues for ease of disposition. The original numbering system is noted in brackets.

[15] The court also notes with disfavor the volume of issues raised after granting an extension of time to complete the Statement, many of which are vague or moot. Appellant, who was represented by the Montgomery County Public Defender's Office at the time, raised seventeen (17) numbered issues on appeal, some with subparts, with statements including "not intended to effect limitations on the scope of the statement of error" and reserving "the right to amend". There is no right to amend a concise statement. Moreover, Appellant's claim that transcripts are missing, raised for the first time in this concise

16

Additionally, Pennsylvania appellate courts have held that a trial judge may find waiver and disregard any argument if a Rule 1925(b) statement is too vague. *Commonwealth v. Reeves*, 907 A.2d 1, 2 (Pa.Super. 2006) (citation omitted). And finally, where events occur that eliminate a claim or controversy at any stage in the judicial process, the issue is rendered moot. *Commonwealth v. Edwards*, 177 A.3d 963, 970 (Pa.Super. 2018) (citing *In re S.H.*, 71 A.3d 973, 976 (Pa.Super. 2013)).

In his first two issues on appeal, Appellant contests the sufficiency of the evidence to support his conviction for second degree murder or any of the related charges "as there was no proof beyond a reasonable doubt Appellant fired the fatal shot." Appellant also challenges the denial of his Counsel's request for judgment of acquittal on the charges of conspiracy to commit murder at the close of evidence. Appellant's argument is flawed and no relief is due.

> A motion for judgment of acquittal challenges the sufficiency of the evidence to sustain a conviction on a particular charge, and is granted only in cases in which the Commonwealth has failed to carry its burden regarding that charge.

*Commonwealth v. Duck*, 171 A.3d 830, 835 (Pa.Super. 2017) (citation omitted); *Commonwealth v. Fitzpatrick*, 159 A.3d 562, 567 (Pa.Super. 2017) (citation omitted).

On a challenge to the sufficiency of the evidence, all evidence, and all reasonable inferences therefrom, must be viewed in the light most

statement more than fourteen (14) months after first seeking an extension of time, is disingenuous at best.

17

favorable to the Commonwealth as the verdict winner. *Commonwealth v. Fortune*, 68 A.3d 980, 983 (2013) *(en banc)* (citation omitted). The appellate court is to consider all of the evidence received, whether or not the trial court's admission thereof was correct. *Commonwealth v. Sanders*, 42 A.3d 325, 329 n.1 (Pa.Super. 2012) (citing *Commonwealth v. Reed*, 605 Pa. 431, 436, 990 A.2d 1158, 1161 (2010)). Further, the evidence must be considered in the aggregate, and not through the examination of isolated fragments. *Commonwealth v. Nixon*, 801 A.2d 1241, 1243 (Pa.Super. 2002) (citing *Commonwealth v. Harper*, 485 Pa. 572, 403 A.2d 536 [538] (1979)).

In reviewing a sufficiency of the evidence claim, the standard to be applied is whether viewing all of the evidence admitted at trial in the light most favorable to the verdict winner, there is sufficient evidence to enable the factfinder to find every element of the crime beyond a reasonable doubt. *Commonwealth v. Matthew*, 589 Pa. 487, 491, 909 A.2d 1254, 1256-57 (2006) (citation omitted); *Commonwealth v. Brown*, 23 A.3d 544, 559 (Pa.Super. 2011) *(en banc)* (citation omitted). In applying this test, the reviewing court may not weigh the evidence and substitute its judgment for that of the factfinder. *Id.*

The Commonwealth may sustain its burden of proving every element of the crime beyond a reasonable doubt by means of wholly circumstantial evidence. *Commonwealth v. Ramtahal*, 613 Pa. 316, 325, 33 A.3d 602, 607 (2011) (citation omitted); *Commonwealth v. Martuscelli,*

18

54 A.3d 940, 947 (Pa.Super. 2012) (citation omitted). While passing upon the credibility of witnesses and the weight of the evidence produced, the trier of fact is free to believe all, part or none of the evidence. *Ramtahal, supra; Martuscelli, supra* (citation omitted).

To sustain a conviction, the Commonwealth need not have presented evidence such as would preclude every possibility of the defendant's innocence. *Fortune, supra* (citation omitted); *Sanders, supra* (citation omitted). Any doubts regarding a defendant's guilt may be resolved by the jury unless the evidence is so weak and inconclusive that as a matter of law no probability of fact may be drawn from the combined circumstances. *Fortune, supra; Sanders, supra.*

In this case, Appellant challenges the evidence adduced in support of the conviction for second degree murder and conspiracy to commit murder. The crime of murder of the second degree as it pertains to this case is defined by statute as follows:

> **(b) Murder of the second degree.**--A criminal homicide constitutes murder of the second degree when it is committed while defendant was engaged as a principal or an accomplice in the perpetration of a felony.
>
> \* \* \* \*
>
> **"Perpetration of a felony."** The act of the defendant in engaging in or being an accomplice in the commission of, or an attempt to commit, or flight after committing, or attempting to commit robbery, rape, or deviate sexual intercourse by force or threat of force, arson, burglary or kidnapping.

19

18 Pa.C.S.A. § 2502(b) and (d). Criminal conspiracy is statutorily

defined as:

> **(a) Definition of conspiracy.**--A person is guilty of conspiracy with another person or persons to commit a crime if with the intent of promoting or facilitating its commission he:
>
> (1) agrees with such other person or persons that they or one or more of them will engage in conduct which constitutes such crime or an attempt or solicitation to commit such crime; or
>
> (2) agrees to aid such other person or persons in the planning or commission of such crime or of an attempt or solicitation to commit such crime.

18 Pa.C.S.A. § 903(a).

Instantly, at the charging conference on July 18, 2016, Attorney

Cooper requested a judgment of acquittal under Pa.R.Crim.P. 606(A)(2) for

the charge of conspiracy to commit murder. Counsel argued that the

Commonwealth had presented insufficient evidence to proceed on the

charge of conspiracy to commit murder when their theory of the case was

a conspiracy to commit burglary, i.e. assault, and not specifically to

commit murder.

Initially, this argument is belied by the first line of the

Commonwealth's opening when Deputy District Attorney McGoldrick

quoted Appellant's statement to his former girlfriend and daughter of the

deceased on the very morning of his murder: "If we can't be together,

somebody got to go". The Commonwealth charged all four coconspirators

with second, not first degree murder. The Commonwealth then proceeded

to introduce evidence showing that after Appellant had abused,

20

Scan & Print / ORN / GEN. GR

manipulated and threatened Egyniah for weeks, she left him to move back in with her parents. The evidence also demonstrated that when he could not convince her to return, he became enraged. Witnesses testified and surveillance video and phone records demonstrated that Appellant took his grandmother's Toyota Camry from its parking spot in the Upsal Street garage in Philadelphia and drove out to case the Brown family home with two of his codefendants at approximately 7:00 p.m. on September 27, 2015. The three men returned to Philadelphia to pick up a fourth man and drove back out to the Lower Moreland Township home. Witnesses inside of the Brown home testified that they heard their back door being kicked in, and heard footsteps running up the stairs to the second floor. The witnesses testified that they heard someone yell "get him" and they heard gunshots as Kevin Brown confronted the men at his bedroom door. Police officers recovered five (5) .22 shell casings from the home.

Neighbors testified that they saw three or four men run from the house and get into a dark four-door sedan and drive away. Sean Creedon described a stockier man wearing a gray hooded sweatshirt get into the driver's seat of the dark sedan. Surveillance video captured the dark Toyota Camry sedan returning to the Philadelphia garage and Appellant in the foyer of the garage at 11:27 p.m. wearing a gray hooded sweatshirt. Dr. Hoyer confirmed that Kevin Brown had died from a bullet wound to the neck.

21

The testimony of codefendant Mathews confirmed much of the Commonwealth's theory of the case. Appellant himself buttressed this testimony by sending handwritten, threatening letters to codefendant Mathews while they were both housed at Montgomery County Correctional Facility. While law enforcement never recovered the murder weapon, the Commonwealth presented sufficient evidence in support of the charges. Viewing the totality of the evidence in the light most favorable to the Commonwealth, this court concludes that the Commonwealth presented sufficient evidence to enable the jury to find every element of second degree murder and conspiracy to commit murder beyond a reasonable doubt. Therefore, Appellant's attack on the sufficiency of the evidence to sustain his convictions must fail.

In his third issue on appeal, Appellant complains that the jury's guilty verdicts on all charges were not supported by the weight of the evidence "as per his post-sentence motion." In his post-sentence motion, Appellant baldly stated: "The verdict was against the weight of the evidence presented at trial." (Motion, filed 11/25/16, at ¶2). At argument on the motion, Attorney Cooper proffered that Appellant should not have been convicted of murder because the jury obviously did not believe that Appellant was the killer since they found him not guilty of the gun charges. (N.T. Post-Sentence Motion, 12/14/16, at 4-5). Counsel posited that, based on Appellant's defense at trial, the jury did not believe Appellant was in the house or in the alternative, that others had set up

22

the burglary and things went wrong, but that Appellant was not responsible. Although the court will address the conviction for second degree murder as preserved for review, Appellant's contention is devoid of merit.

In contrast to a sufficiency claim, "[a] true weight of the evidence challenge concedes that sufficient evidence exists to sustain the verdict but questions which evidence is to be believed." *Commonwealth v. Miller*, 172 A.3d 632, 643 (Pa.Super. 2017) (quoting *Commonwealth v. Thompson*, 106 A.3d 742, 758 (Pa.Super. 2014)). In bringing this claim, an appellant seeks "a new trial on the ground that the evidence was so one-sided or so weighted in favor of acquittal that a guilty verdict shocks one's sense of justice." *Commonwealth v. Diaz*, 152 A.3d 1040, 1046 (Pa.Super. 2016) (citing *Commonwealth v. Lyons*, 622 Pa. 91, [116], 79 A.3d 1053, 1067 (2013)). *Accord Commonwealth v. Cash*, 635 Pa. 451, 467, 137 A.3d 1262, 1270 (2016) (citation omitted). One of the "least assailable reasons" for denying a new trial is a trial court's conviction that the jury's verdict was or was not against the weight of the evidence. *Miller, supra* (citation omitted).

Appellate review of such a challenge is well settled:

> The weight of the evidence is a matter exclusively for the finder of fact, who is free to believe all, part, or none of the evidence and to determine the credibility of the witnesses. A new trial is not warranted because of "a mere conflict in the testimony" and must have a stronger foundation than a reassessment of the credibility of witnesses. Rather, the role of the trial judge is to

23

determine that notwithstanding all the facts, certain facts are so clearly of greater weight that to ignore them or to give them equal weight with all the facts is to deny justice. On appeal, our purview is extremely limited and is confined to whether the trial court abused its discretion in finding that the jury verdict did not shock one's conscience. Thus, appellate review of a weight claim consists of a review of the trial court's exercise of discretion, not a review of the underlying question of whether the verdict is against the weight of the evidence. An appellate court may not reverse a verdict unless it is so contrary to the evidence as to shock one's sense of justice.

*Commonwealth v. Rosser*, 135 A.3d 1077, 1090 (Pa.Super. 2016) *(en banc)*, *quoting Commonwealth v. Gonzalez*, 109 A.3d 711, 723 (Pa.Super. 2015), *appeal denied*, 125 A.3d 1198 (Pa. 2015) (citations omitted).

*Diaz, supra. Accord Commonwealth v. Izurieta*, 171 A.3d 803, 809 (Pa.Super. 2017 (citation omitted). "Resolving contradictory testimony and questions of credibility are matters for the finder of fact." *Miller, supra* at 642 (citation omitted).

In the case *sub judice*, Attorney Cooper simply stated at argument on the post-sentence motion that the verdict was against the weight of the evidence because the jury did not believe that Appellant had fired the fatal shot since they acquitted him of the gun charges. However, there are a myriad of reasons why the jury may have acquitted Appellant of the gun charges given that investigators were unable to recover the .22 caliber murder weapon. Moreover, this argument demonstrates a basic misapprehension of the charge of and conviction for second degree murder.

24

Having presided over the eleven-day trial, having heard the testimony and observed the demeanor of all of the witnesses, this court disagrees with Appellant's characterization of the evidence. Nevertheless, it was exclusively within the jury's purview to do exactly what they did; that is, to weigh the evidence and accept all, part or none of it, and determine the credibility of all of the witnesses.

The Commonwealth demonstrated that Appellant had the personal motive to exact revenge against Egyniah and her family because Egyniah had left him and moved back in with her family. Appellant's Counsel arduously tested Egyniah's version of the events. Both direct and circumstantial evidence supported the Commonwealth's theory that Appellant was the ringleader of this home invasion. Testimony as well as other evidence substantiated that Appellant removed his grandmother's car from the garage without permission, rounded up his three coconspirators and drove out to Egyniah's house twice. Surveillance video places Appellant in the Philadelphia parking garage where his grandmother parked the black Toyota sedan at the relevant times. Records from his cellular telephone substantiate the trips out to the crime scene in Montgomery County and back twice. The testimony of codefendants Mathews and Smith substantiate those trips. Appellant then handwrote threatening letters in prison to codefendant Mathews after learning of Mathews' statement to police implicating Appellant.

25

This court then instructed the jury on their duty and the jury carried out their duty. It was the jury's role as factfinder to evaluate all of the evidence and determine the weight to give it. It is the undersigned's opinion that, in addition to the video evidence and the cell phone record evidence, Egyniah's and codefendant Mathew's testimony at trial was reliable and of sufficient weight to sustain the jury's verdict. Because Appellant cannot demonstrate that the jury's verdict so shocked one's sense of justice as to lead to the conclusion that this court abused its considerable discretion in declining to grant relief, Appellant's third claim necessarily must fail.

In his fourth issue raised on appeal, Appellant insists for a multitude of reasons that the court erred in denying his motion to suppress his statements to the police. The specific claims argued and preserved before this court are as follows: "the statement was taken in violation of [Appellant's] rights because 1) the approximately eight-hour interrogation was too long, 2) the purposeful delay in between the first and second portions was coercive, 3) the detectives failed to re-*Mirandize* Defendant after the break and 4) the use of the photograph to obtain additional information constituted undue pressure and coercive tactics which lead to an involuntary statement." (Findings of Fact and Conclusions of Law, filed 6/30/16, at 15-16).

Where, as here, a defendant files a motion to suppress, the burden is on the Commonwealth to demonstrate by a preponderance of the

26

evidence that the challenged evidence was properly obtained. Pa.R.Crim.P. 581; *Commonwealth v. Galendez*, 27 A.3d 1042, 1046 (Pa.Super. 2011) *(en banc)*. As it relates to this case, the Commonwealth bears the burden of proving by a preponderance of the evidence that a defendant's statement or confession is voluntary. *Commonwealth v. Yandamuri*, 639 Pa. 100, 136, 159 A.3d 503, 525 (2017) (citing *Commonwealth v. Nester*, 551 Pa. 157, 162-63, 709 A.2d 879, 882 (1998)); *Commonwealth v. Harrell*, 65 A.3d 420, 434 (Pa.Super. 2013) (citation omitted). "[I]t is within the suppression court's sole province as factfinder to pass on the credibility of witnesses and the weight to be given their testimony." *Galendez, supra; Commonwealth v. Baker*, 24 A.3d 1006, 1015 (Pa.Super. 2011). *Accord Commonwealth v. Simmen*, 58 A.3d 811, 817 (Pa.Super. 2012) (explaining suppression court may believe all, part or none of the evidence presented).

As previously stated, this court presided over a suppression hearing on May 18, 2016, and issued its Findings of Facts and Conclusions of Law on June 30, 2016. Therein, the undersigned reiterated the facts underlying the Commonwealth's procurement of Appellant's statements as well as the applicable and relevant law. After examining the totality of the circumstances, this court concluded that Appellant had voluntarily waived his constitutional rights under *Miranda*, that the waiver was valid, that Appellant had made his statement voluntarily and that it was the product of free and unconstrained choice. The undersigned incorporates the

twenty (20) page Findings of Fact and Conclusions of Law and the reasoning therein in support of this opinion.

In his fifth and sixth issues presented on appeal, Appellant asserts that the court erred in denying Appellant's motion to sever, the motion in opposition to joinder and the motion for a mistrial. In his concise statement, Appellant alleges error in the denial of the motions to sever and in opposition to joinder because the role of Appellant's codefendants, who ultimately pled guilty, caused prejudicial confusion and impaired Appellant's right to a fair trial. Appellant did not preserve this claim in the trial court. Rather, the basis in the trial court for the motion to sever and motion in opposition to joinder centered on Bruton[16] issues which Appellant has raised in a separate claim. (N.T. Hearing on Pretrial Motions, 5/19/18, at 9-13). Moreover, Appellant does not provide any explanation of the "prejudicial confusion" he alleges or how it impaired his right to a fair trial. Accordingly, Appellant's fifth issue is waived. In addition, at the time this issue was argued, Appellant's Counsel was under the impression that Mathews' statement was going to be read to the jury by the Commonwealth. Instead, Mathews testified as a Commonwealth witness and was cross-examined by Appellant's Counsel.

Similarly, Appellant's vague complaint that the court erred in denying his motion for a mistrial pursuant to *Commonwealth v. Scarfo*, 611 A.2d 242 (Pa.Super. 1992) lacks merit.

---

[16] *Bruton v. United States*, 391 U.S. 123, 88 S.Ct. 1620, 20 L.Ed.2d 476 (1968).

28

The harm raised by the defense and addressed by the Superior Court in *Scarfo*, centered on government intrusion into a group defense camp and the resulting interference in the attorney-client relationship. In *Scarfo*, plea negotiations had been ongoing for approximately two weeks with a defendant who had been participating in a group defense when he changed his plea, agreed to cooperate with the prosecution, the Commonwealth failed to "satisfactorily describe or aver that they had created some sort of separation between the agents and prosecutors handling the change in plea and those trying the case" and there had not been an evidentiary hearing. *Id.* at 266. Because these circumstances raised "a sufficient inference to warrant a finding that an intrusion may have occurred", the appellate court remanded for a new trial. *Id.*

Instantly, Attorney Cooper made an oral motion for a mistrial on July 12, 2016, the morning after codefendant Amin entered an open guilty plea to third-degree murder. The court conducted an evidentiary hearing the next morning at which the following became clear: 1) codefendant Amin's statement to police did not implicate himself or any of his codefendants; 2) Counsel for codefendant Amin deferred to his client's decision on which potential jurors to strike; 3) both codefendant Amin and codefendant Smith rejected a plea offer on Wednesday, July 6, 2016; 4) on Friday, July 8, 2016, Amin's Counsel asked the Commonwealth for a plea offer; 4) Deputy District Attorney McGoldrick did not participate in the plea negotiations, and 5) codefendant Amin absolutely and unequivocally

refused to cooperate with the Commonwealth. The court determined that there had been no governmental intrusion into the defense camp and denied Appellant's motion for a mistrial. As a result, Appellant's sixth issue on appeal is unavailing.

In his seventh issue, Appellant contends that the court erred in granting the Commonwealth's motion to introduce prior bad acts and, specifically, allowing the "highly prejudicial" testimony concerning an alleged sexual assault. The claim warrants no relief.

Long-settled Pennsylvania law provides as follows:

> The trial court's decision to admit evidence is subject to review for an abuse of discretion. *Commonwealth v. Dengler,* 586 Pa. 54, 890 A.2d 372, 379 (2005). "An abuse of discretion may not be found merely because an appellate court might have reached a different conclusion, but requires a result of manifest unreasonableness, or partiality, prejudice, bias, or ill-will, or such lack of support so as to be clearly erroneous." *Commonwealth v. Dillon,* 592 Pa. 351, 925 A.2d 131, 136 (2007); *Grady v. Frito–Lay, Inc.,* 576 Pa. 546, 839 A.2d 1038, 1046 (2003).

> Evidence of "other crimes, wrongs, or other acts" is inadmissible solely to show a defendant's bad character or his propensity for committing criminal acts. Pa.R.E. 404(b)(1); *Commonwealth v. Lark,* 518 Pa. 290, 543 A.2d 491 (1988). Such evidence is admissible, however, when relevant for another purpose, including motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake. Pa.R.E. 404(b)(2); *Commonwealth v. Chmiel,* 585 Pa. 547, 889 A.2d 501, 534 (2005). This Court has also recognized the *res gestae* exception, permitting the admission of evidence of other crimes or bad acts to tell "the complete story." *Commonwealth v. Williams,* 586 Pa. 553, 896 A.2d 523, 539 (2006); *Commonwealth v. Paddy,* 569 Pa. 47, 800 A.2d 294, 308 (2002); *Lark,* 543 A.2d at 497. Such evidence may be admitted, however, "only if the probative value of the evidence

outweighs its potential for unfair prejudice." Pa.R.E. 404(b)(2).

*Commonwealth v. Hairston*, 624 Pa. 143, 157, 84 A.3d 657, 664-65 (2014).[17] *Accord Commonwealth v. Drumheller*, 570 Pa. 117, 135-38, 808 A.2d 893, 904-05 (2002) (citations omitted) (affirming admission of prior abusive relationship spanning three years as prior bad acts evidence); *Commonwealth v. Yocolano*, 169 A.3d 47, 53-55 (Pa.Super. 2017) (concluding trial court did not abuse its discretion in allowing evidence of the victim's and the appellant's abusive relationship as prior bad acts).

As it specifically applies to the case *sub judice*, our appellate courts have affirmed decisions to admit prior bad act evidence which corroborates the Commonwealth's theory of a case and demonstrates motive or intent, as well as to tell the complete story. *See, e.g., Hairston, supra* (citations omitted); *Yocolano, supra*; *Commonwealth v. King*, 959 A.2d 405 (Pa.Super. 2008) (affirming trial court's decision to admit prior

---

[17] The Pennsylvania Rules of Evidence specifically provide as follows:

**(b) Crimes, Wrongs or Other Acts.**

*(1) Prohibited Uses.* Evidence of a crime, wrong, or other act is not admissible to prove a person's character in order to show that on a particular occasion the person acted in accordance with the character.

*(2) Permitted Uses.* This evidence may be admissible for another purpose, such as proving motive, opportunity, intent, preparation, plan, knowledge, identity, absence of mistake, or lack of accident. In a criminal case this evidence is admissible only if the probative value of the evidence outweighs its potential for unfair prejudice.

Pa.R.E. 404(b).

31

bad act evidence corroborating Commonwealth's theory of motive of killing victim in retaliation for cooperating with police). In applying the *res gestae* exception, "our courts will allow evidence of prior bad acts where the distinct crime or bad act 'was part of a chain or sequence of events which formed the history of the case and was part of its natural development.'" *Drumheller, supra* at 137, 808 A.2d at 905 (citation omitted). *Accord Hairston, supra* at 159 (discussing cases); *Commonwealth v. Green*, 76 A.3d 575, 584 (Pa.Super. 2013). Although there is "no specific timeframe that dictates the applicability of the exception", the prior bad acts must be "near in time and place". *Green, supra; accord Drumheller, supra* (stating remoteness of prior instances affects the weight of that evidence and not its admissibility).

In addition, "proving motive, while not an element of a crime, is intended to demonstrate that the person charged with the crime had reason to commit that crime and was more likely than another individual to commit the offense charged." *Commonwealth v. Mollett*, 5 A.3d 291, 307 (Pa.Super. 2010). For prior bad act evidence to be admissible under the motive exception, "there must be a specific 'logical connection' between the other act and the crime at issue which establishes that 'the crime currently being considered grew out of or was in any way caused by the prior set of facts and circumstances.'" *Commonwealth v. Ross*, 57 A.3d 85, 100 (Pa.Super. 2012) (*en banc*) (citation omitted). *Accord Drumheller, supra* at 140, 808 A.2d at 906 (citation omitted).

32

Once the court concludes that the evidence is admissible for one or more of the limited purposes, it must then conduct a balancing inquiry to determine whether the evidence's probative value outweighs its potential for unfair prejudice. *Hairston, supra* at 157, 84 A.3d at 665 (citation omitted); *accord Commonwealth v. Spotz,* 562 Pa. 498, 523, 756 A.2d 1139, 1152 (2000) (citation omitted). In conducting this inquiry,

> courts must consider factors such as the strength of the other crimes evidence, the similarities between the crimes, the time lapse between crimes, the need for the other crimes evidence, the efficacy of alternative proof of the charged crime, and the degree to which the evidence probably will rouse the jury to overmastering hostility.

*Yocolano, supra* at 55 (citing *Commonwealth v. Brown,* 52 A.3d 320, 325-27 (Pa.Super. 2012)).

Evidence of other crimes will not be prohibited merely because it is harmful to the defense. *Hairston, supra* at 666. (citing *Commonwealth v. Dillon,* 592 Pa. 351, 925 A.2d 131 141 (2007)). Rather, " 'unfair prejudice' means a tendency to suggest decision on an improper basis or to divert the jury's attention away from its duty of weighing the evidence impartially." *Hairston, supra* (citing Pa.R.E. 403 cmt.).

Finally, Pennsylvania appellate courts have underscored the presumption that a jury will follow the trial court's instructions. *Commonwealth v. Hoover,* 630 Pa. 599, 614, 107 A.3d 723, 731-32 (2014) (citation omitted); *Commonwealth v. Travers,* 564 Pa. 362, 366, 768 A.2d 845, 847 (2001) (citations omitted). Where a trial court has given a

33

cautionary instruction to the jury which outlined the purpose for which the prior bad act evidence at issue could be considered, the appellate courts have generally held that the limiting instruction either cured or minimized any possible prejudicial effect of the evidence at issue. *See Hairston, supra* at 160, 84 A.3d at 666-67 (discussing cases); *Drumheller, supra* at 138-39, 808 A.2d at 906 (citations omitted).

Here, the Commonwealth sought to introduce evidence of Appellant's abusive relationship with Egyniah and accompanying threats and manipulation, and specifically the prior rape involving Appellant and codefendant Smith and a prior physical assault by Appellant, to establish a motive for the home invasion resulting in the murder of Egyniah's father and the natural development or *res gestae* of the case. This evidence was relevant and necessary to explain why Egyniah left him and moved back in with her parents and establish Appellant's motive for seeking revenge when he could no longer manipulate her.

Although this prior bad acts evidence may have been prejudicial, it was not unduly so. Moreover, any prejudicial effect of Egyniah's testimony was minimized by this court's limiting instructions to the jury. As this court has done in other cases and other trial courts have done as well, the court provided the jury with an instruction drafted by Counsel regarding the limited purpose for which they could consider the evidence. The jury was then free to accept or reject the evidence and to give it

whatever weight they felt it deserved. Consequently, this contention warrants no relief.

Appellant complains in his eighth issue, consisting of four (4) subsections, that the court erred in admitting the statement of codefendant Smith because it implicated Appellant and because of various redaction requests Appellant claims the court denied. A review of the record demonstrates that Appellant is mistaken.

Preliminarily, Attorney Cooper did not argue a general objection to the admission of codefendant Smith's statement at trial, nor was there a reasonable basis to do so.[18] Attorney Cooper requested severing the trials based upon *Bruton* issues as argued on May 19, 2016. In addition, Attorney Cooper argued the specific redactions he proposed to the statements of codefendants Smith and Mathews on June 22, 2016. Attorney Cooper had no objection to the Commonwealth introducing evidence that Appellant and Egyniah were married in the Muslim faith. He did object, however, to codefendant Smith's statement wherein codefendant Smith admitted engaging in sexual acts with Egyniah under the direction of Appellant, referred to at trial in Smith's statement as "the other guy". Attorney Cooper also objected to the introduction of this sexual encounter as a prior bad act, which the court has addressed separately *supra*. There was no error in the introduction of codefendant

---

[18] The Commonwealth moved for the admission of codefendant Smith's Statement without objection. (N.T. Trial, 7/12/16, at 59).

Smith's statement at trial. Further, in the final portion of this claim, Appellant insists that the court erred in denying the defense's proposed redaction to the term "the other guy" and the request to redact the statement "I saw him on the news."

An actual reading of the record, however, reveals that it was Attorney Cooper who proposed the term "the other guy" on the previous page in the transcript, referring at that point to codefendant Mathews' statement. The record also reveals that the court granted Attorney Cooper's Motion *in Limine* objecting to these statements. (Order: Defendant Naadir Abdul-Ali's Motion *in Limine*, docketed 6/30/16). Additionally, the court notes that Mujahid Mathews testified at trial. The only portions of his statement read at trial were read by defense counsel. Hence, Appellant's eighth issue is entirely devoid of merit.

In his ninth and tenth issues on appeal, Appellant argues that the court erred in denying Appellant's oral motion to introduce photographs of a topless Egyniah Muhammad and publish them to the jury as well as in denying his request for a jury instruction regarding her delay in reporting the rape. These claims are also devoid of merit.

"Generally speaking, evidence is admissible if it is relevant, that is, 'if it logically tends to establish a material fact in the case, tends to make a fact at issue more or less probable or supports a reasonable inference or presumption regarding a material fact.' " *Commonwealth v. Kinard*, 95 A.3d 279, 284 (Pa.Super. 2014) (*en banc*) (citation omitted). As stated

36

earlier, a trial court decision to admit or exclude evidence is reviewed under an abuse of discretion standard. *Hairston, supra* at 157, 84 A.3d at 664 (citations omitted).

Instantly, the court concluded that the photographs Attorney Cooper sought to introduce after Egyniah's direct testimony that he had received as part of discovery from Appellant's cell phone were not relevant to the issues at hand and were instead an improper attempt to attack her credibility. The court properly employed its discretion in denying Appellant's request.

As a Superior Court panel also recently explained:

> In reviewing a challenge to the trial court's refusal to give a specific jury instruction, it is the function of this Court to determine whether the record supports the trial court's decision. In examining the propriety of the instructions a trial court presents to a jury, our scope of review is to determine whether the trial court committed a clear abuse of discretion or an error of law which controlled the outcome of the case. A jury charge will be deemed erroneous only if the charge as a whole is inadequate, not clear or has a tendency to mislead or confuse, rather than clarify, a material issue. A charge is considered adequate unless the jury was palpably misled by what the trial judge said or there is an omission which is tantamount to fundamental error. Consequently, the trial court has wide discretion in fashioning jury instructions. The trial court is not required to give every charge that is requested by the parties and its refusal to give a requested charge does not require reversal unless the Appellant was prejudiced by that refusal.

*Commonwealth v. Sandusky*, 77 A.3d 663, 667 (Pa.Super. 2013) (citing *Commonwealth v. Thomas*, 904 A.2d 964, 970 (Pa.Super. 2006)). A prompt complaint instruction is not mandated even in a sexual assault case. (*Id.*).

37

As previously noted, the Commonwealth did not charge Appellant with rape or sexual assault in this case. On direct, Egyniah testified that she did not want to engage in sexual activity with codefendant Smith, that she did not consent to the encounter but, rather, Appellant had frightened and intimidated her into doing so.

Attorney Cooper thoroughly cross-examined Egyniah concerning her version of her relationship with Appellant and the events leading up to the home invasion and murder of her father. Additionally, Attorney Cooper argued in closing that the jury should question her credibility based on the inconsistencies in her testimony. Finally, the court read an agreed-upon curative instruction regarding the prior bad act testimony. Hence, the court properly exercised its discretion in denying Appellant's request to allow the admission of the photographs and to read the prompt complaint jury instruction.

In his eleventh issue on appeal, Appellant contends that the trial court erred in granting the Commonwealth's Motion to preclude evidence of the convictions of Commonwealth witnesses Joseph Reynolds and Carlisha Devereux at trial. Appellant is mistaken.

Preliminarily, the court notes that the Commonwealth did not present Carlisha Devereux as a witness at trial. Therefore, the claim as it relates to Ms. Devereux is moot. The claim as it relates to Joseph Reynolds warrants no relief.

38

Pursuant to Pennsylvania Rule of Evidence 609, evidence of a *crimen falsi* conviction must be admitted against a witness for impeachment purposes where the date of conviction or last day of confinement is less than ten (10) years old. Pa.R.E. 609(a),(b). In determining whether *crimen falsi* convictions older than ten (10) years are admissible as more probative than prejudicial, Pennsylvania courts are to consider and balance the following five (5) factors:

> (1) the degree to which the commission of the prior offense reflects upon the veracity of the [witness]; (2) the likelihood, in view of the nature and extent of the prior record, that it would have a greater tendency to smear the character of the [witness], rather than provide a legitimate reason for discrediting him as an untruthful person; [(]3) the age and circumstances of the [witness]; [(]4) the strength of the prosecution's case and the prosecution's need to resort to this evidence as compared with the availability to the defense of other witnesses through which its version of the events surrounding the incident can be presented; and [(]5) the existence of alternative means of attacking the [witness]'s credibility.

*Hoover, supra* at 604, 107 A.3d at 725 (citing *Commonwealth v. Randall*, 515 Pa. 410, 528 A.2d 1326 (1987)).

In the case at bar, the disputed conviction according to Counsel was for criminal attempt at theft on May 31, 2006. (N.T. Hearing on Motions *in Limine*, 6/22/16, at 70). Appellant's trial commenced with jury selection on Tuesday, July 5, 2016, which is outside of the ten-year mandatory period. Mr. Reynolds' proffered testimony was limited to the number of people he saw run from the back door of Kevin Brown's house after hearing gunshots just after 11:00 p.m. on Sunday, September 27,

39

2016. It bears repeating that Mr. Reynolds was unable to specifically identify any of those people. (*Id.* at 74). After hearing oral argument and having conducted the balancing test based upon the representations of Counsel, the court properly exercised its discretion and granted the Commonwealth's motion. Thus, this claim is baseless.

In his twelfth and thirteenth issues on appeal, Appellant asserts that the court erred in granting the Commonwealth's motions to admit Appellant's handwritten letter sent to codefendant Mathews in November 2015 when both were housed at Montgomery County Correctional Facility and Appellant's refusal to submit a handwriting exemplar. The record reveals that Attorney Cooper did not object to the introduction of Appellant's refusal to submit an exemplar. Hence, that claim is waived. (N.T. Hearing on Pretrial Motions, 5/19/16, at 93; Order: Commonwealth's Motion *in Limine* to Admit Evidence of Defendant's Refusal to Submit Handwriting Exemplar, docketed June 24, 2016). Further, neither claim has merit.

When ruling on a trial court's decision to grant or deny a motion *in limine*, the appellate courts apply an evidentiary abuse of discretion standard of review. *Commonwealth v. Mangel*, 181 A.3d 1154, 1158 (Pa.Super. 2018) (citation omitted). "The admission of evidence is committed to the sound discretion of the trial court". *Id.* "The proponent of the evidence must introduce sufficient evidence that the matter is what it purports to be." *Id.* at 1159 (citing Pa.R.E. 901(a)).

In the instant matter, the Commonwealth provided direct and circumstantial evidence that Appellant authored two of the three letters and had someone else handwrite the third after law enforcement had requested a handwriting exemplar from Appellant. Testing revealed Appellant's own fingerprint on the first letter. However, the Commonwealth also proffered substantial circumstantial evidence including, *inter alia*, the references to nicknames of the only other codefendants, Smith and Amin, the same or similar language used in all three letters, the misspelling of the same word in two of the letters, and the fact that the correspondence was handwritten on Montgomery County Correctional Facility letterhead combined with the information of what pod or cell block each of them was housed in at the correctional facility. Additionally, Appellant's refusal to provide a handwriting exemplar constituted additional circumstantial evidence that Appellant was the author of those letters. Accordingly, these issues are devoid of merit.

Appellant asserts in his fourteenth issue on appeal that the court erred in denying his motion to exclude otherwise eligible jurors from the jury because they lived in Lower Moreland Township. Without any basis or legal support whatsoever, Counsel baldly stated that jurors from Lower Moreland Township would be adversely affected upon hearing the facts of this case and, thus, they should be excluded from the jury pool. This issue is moot. Moreover, it is totally lacking in merit.

41

The proper stage to test potential juror qualifications as well as possible bias is during *voir dire*. *Commonwealth v. Richardson*, 504 Pa. 358, 362, 473 A.2d 1361, 1363 (1984). "The purpose of voir dire is to ensure the empaneling of a fair and impartial jury capable of following the instructions on the law as provided by the trial court." *Commonwealth v. Hackett*, 558 Pa. 78, 83, 735 A.2d 688, 691 (1999).

In this case, the court conducted extensive *voir dire* of the panel of potential jurors and Counsel had the opportunity to ask follow up questions with individual members. At the close of jury selection, there were no objections to the panel and all Counsel stated that this was the jury they had selected. Thus, this claim warrants no relief.

Appellant's last three issues raised on appeal have been waived or are moot. Citing to the court's June 24, 2016 order in issue fifteen, Appellant complains that the court erred in granting the Commonwealth's motion *in limine* to admit the 911 audio recordings of the victim's wife, Cassandra Brock, and daughter, Ruquaiyyah Muhammad. As stated in the cited order, defense Counsel did not respond to the motion nor did Counsel raise an objection to the motion at oral argument.[19] Hence, this issue is waived.

In his sixteenth issue on appeal, Appellant complains that the court erred in granting the Commonwealth's motion to admit evidence of Sallie

---

[19] Notably, as with many of these issues on appeal, Counsel is objecting to the order granting the motion and not to the admittance of this evidence at trial. Regardless, Appellant raised no objection to the evidence at trial as well. (N.T. Trial 7/12/16 at 175).

Jackson's testimony before an investigating grand jury. Notably, Appellant did not respond to the Commonwealth's motion, as noted in the court's June 29, 2016 order, nor did Counsel object at oral argument on the motion. (N.T. Hearing on Motions *in Limine*, 6/22/16, at 63).

As a review of the record demonstrates, Ms. Jackson was an alibi witness for codefendant Smith only. Once codefendant Smith presented her testimony on his behalf, the court permitted the Commonwealth to cross exam Ms. Jackson with allegedly false testimony before a grand jury regarding her relationship with codefendant Smith in an effort to impeach her credibility. There existed no reasonable basis upon which Appellant's Counsel should have objected. This issue is disingenuous at best and has been waived.

In the final issue raised on appeal, Appellant insists that the court erred in denying his request for a *Frye* hearing. The contention is moot.

Initially, Attorney Cooper filed a *Daubert*[20] motion that he argued before the court on May 19, 2016. In response to the Commonwealth's argument, Attorney Cooper conceded that he was not requesting a *Frye*[21] hearing but, rather, specific discovery. (N.T. Hearing on Pretrial Motions, 5/19/16, at 45-57). On June 27, 2016, Attorney Cooper filed a bald motion requesting a hearing to determine if the fields of handwriting

---

[20] *Daubert v. Merrell Dow Pharmaceuticals, Inc.,* 509 U.S. 579, 113 S.Ct. 2786, 125 L.Ed.2d 469 (1993).

[21] *Frye v. United States,* 293 F. 1013 (D.C.Cir.1923).

expertise and fingerprint evidence expertise have a sufficient foundation to be admitted where the Commonwealth "may" introduce proposed evidence. (Motion for *Frye* Hearing, filed 6/27/16). In response, the court issued an order on June 29, 2016, in which the court stated as follows: "[a]t the appropriate time, Counsel will have ample opportunity to *voir dire* each expert witness and the [c]ourt will address any opposition based upon a legitimate dispute at that time." (Order: Defendant Naadir Abdul-Ali's Motion for *Frye* Hearing, docketed June 29, 2016). Accordingly, Appellant's final issue is moot.

## V.   CONCLUSION

Based upon the foregoing analysis, this court respectfully requests that the Superior Court affirm Appellant's judgment of sentence.

BY THE COURT:

THOMAS P. ROGERS, J.
**Court of Common Pleas**
**Montgomery County, Pennsylvania**
**38th Judicial District**


Copies sent on 07/11/18 to:
**By Interoffice Mail:**
Deputy District Attorney Robert M. Falin, Chief of Appeals Division,
     Office of the Montgomery County District Attorney
**By First-Class Mail:**
Lauren A. Wimmer, Esquire, Counsel for Appellant, Naadir Abdul-Ali

Naadir Abdul-Ali MW9735
SCI Houtzdale
P.O. Box 1000
Houtzdale, PA 16698-1000

_____
Judicial Secretary

45